## THE PEOPLE *vs.* McGEE.

Upon the trial of an indictment for rape, the declarations of the injured female, made immediately after the alleged offence, are not admissible evidence for the prosecution to prove the offence committed; and the rule is the same though it appear that she is incompetent to testify on account of immature age, idiocy, or other mental defect.

Such declarations are only competent where the party injured has given evidence as a witness, and then only upon the question of her credibility.

Where the injured person is of sufficient age and of competent though weak understanding, but is unable to talk, and can communicate and receive ideas only by signs, she may yet be sworn as a witness, and examined through the medium of a person who can understand her, who is to be sworn to interpret between her and the court and jury.

ERROR to the Monroe oyer and terminer. The defendant was convicted of rape committed upon the person of one Mary Marshall.

On the trial it appeared that she was an inmate of the poor house of that county, about thirty years of age, and of imbecile understanding. One of the witnesses considered her an idiot; but the keeper of the poor house testified, that although she

could not talk, she had understanding enough to take care of herself, to communicate her wants, and to render much service about the establishment: that she communicates her ideas to others by signs, and the witness said he had no difficulty in conducting communications with her in that manner upon ordinary subjects; that she observes things which occur about her, and has frequently informed the witness of them, by signs. The affair occurred in the woods near the highway, whither she had been taken by the defendant and another person in a wagon. Thomas Smith, a witness for the prosecution, who was at the time on horseback in the road, testified that he saw the defendant throw her down, and place himself in respect to her in a situation to commit the offence, and that she repeatedly screamed, during the time he saw them; but he passed on to give information to others, and could not testify positively that the offence was committed. Trisket, the keeper of the poor house, was examined for the prosecution, and testified that shortly after the time mentioned by the other witness he found her near the woods, her face bloody and her clothes soiled with dirt behind. That on being accosted by the witness she commenced crying. The prosecution then proposed to prove by the witness, that he enquired of her what had happened, and that she by signs which he understood and would describe, communicated to him the fact that she had been violated. This evidence was objected to by the counsel for the defendant, but the objection was overruled, and the evidence, which was to the effect offered, was received, the defendant excepting. Another witness, who saw her immediately after the affair testified to by the first witness, proved facts going strongly to corroborate the idea that she had been treated in the manner charged, and that she by motions and gestures indicated to him that such was the fact.

The court advised the jury, that if they were satisfied by the evidence that the defendant had perpetrated the offence, they ought to find him guilty. A bill of exceptions was tendered and signed by the judges.

The People *v.* McGee.

*E. Griffin,* for the defendant, insisted that the declarations of Mary Marshall, conveyed by signs or otherwise, were not competent evidence. In an indictment for the offence, if the injured female has been sworn, it is competent for the prosecution to show that she made complaint in season, and otherwise con - ducted in a manner consistent with her story; but her declarations, without oath to establish the body of the offence, cannot be received. He cited *Phil. Ev.* 18 *to* 20; *Brazee's case,* 1 *East's P. C.* 443.

*J. W. Gilbert,* district attorney, for the people. Evidence that the female made complaint immediately after the injury has always been held admissible. (1 *East's P. C.* 443, 4; 1 *Hale's P. C.* 633; *Roscoe's Cr. Ev.* 21; *Stark. on Ev. pt.* 4, *p.* 1268.) The only cases in which the competency of such testimony, to identify the defendant or define the offence, has been questioned, are *Reg.* v. *Guteridge et al.,* 9 *Carr. & Payne,* 471, and *Same* v. *Megson, id.* 428. These are hasty *nisi prius* cases, apparently not based on any authority, and should not be permitted to change an established rule of evidence.

The female in this case had sufficient intelligence to render her communications on such a subject competent, though not sufficient to be examined as a witness. Want of understanding on account of immature age in the party injured does not exclude her declarations; (*Brazee's case ;*) and there is no difference in principle whether the want of understanding arise from immaturity or any other cause.

The communications were not the less admissible for being made by signs. (*See John Ruston's case, Leach's C. L.* 455.) The counsel also referred to *Rex* v. *Clarke,* (2 *Stark. Rep.* 214,) which he said admitted the evidence to be competent to show that a complaint had been made.

*By the Court,* JEWETT, J. The trial of this case seems to have proceeded upon the ground that the female upon whom the defendant was charged to have committed the offence, was incompetent to be sworn as a witness, by reason of defect of in-

tellect. After the evidence of Smith, the principal witness, had been given, tending to show a violent assault by defendant upon the female with intent to commit the offence, evidence was received, under objection and exception to its admissibility, of certain *signs* and *motions* made by her to the witness immediately after the offence is supposed to have been perpetrated, indicating to the witness, who it seems could understand the purport and meaning of them, that the offence charged had been committed by some person. Was such evidence upon any ground admissible? It is not denied but that, if the female had been a competent witness, had been sworn and had given her evidence, it would have been competent to prove by other witnesses her acts and declarations immediately after the offence was charged to have been committed; not as *confirmatory* of the *truth* or *falsity* of her evidence, but as *affecting* the credibility of her testimony. (4 *Bl. Comm.* 213; 1 *Phill. Ev.* 233, ed. 1839.) So the state and appearance of the female, marks of violence upon her person, and the torn and disordered state of her dress recently after the transaction, as in the present case to some extent, are material circumstances, and always admissible in evidence, whether she be sworn or not. (1 *Hale*, 628, 9; 1 *Hawk.* 41, § 6; 4 *Bl. Comm.* 213; *East's P. C.* 446.)

It is insisted on the part of the people, that when persons are excluded from being witnesses for want of understanding, whether it arises from *immaturity* or *defect* of intellect, evidence may be given of their *declarations* as to the *offence* charged.

It is said, (1 *Chit. Cr. Law, Riley's* ed. 481, 1 *Leach*, 110, 199,) "It was once thought that when the party immediately injured was an infant of tender years, the parents of the child might be admitted to state the account he had given of the transaction immediately after it had taken place, and that the infant might be examined *though not sworn;* (and so is the authority of 2 *Hale*, 278, 9, *Bull. N. P.* 293;) but both these ideas are now rejected, and it is fully established that if the infant is of competent discretion, he may be sworn, however young; and if not, no evidence whatever can be given respecting his assertions."

That being the true rule in case of a person *immature* in in-

tellect, I cannot see why the reason of the rule does not apply with as much force to exclude all evidence of the declarations, assertions or signs made, supposed to communicate ideas, by a person who is incompetent to be sworn as a witness by reason of idiocy, or weakness of intellect for any cause, *as evidence of the commission of the offence,* or to affect the credit of any other witness. I do not understand the objection as going against any evidence of the *appearance* and *condition* of the female at the time, but only as against *communications* made by her to the witness, by which she *informed* him of particular injuries inflicted upon her, tending to prove forcible sexual connexion, or from which it could properly be inferred.

The evidence of Trisket proceeded upon the idea that the female was of sense, sufficient to have intelligence conveyed to her, and to communicate intelligence to the witness, by *signs* and *motions.* Trisket testified that she was not a *fool.* She could not talk, but could make signs and had understanding enough to take care of herself, to communicate her wants, and to render much service at the poor house, of which she was an inmate. She observed things that occurred about her, frequently informed witness of them by signs, and that *he* was able to comprehend her signs, and had no difficulty in *carrying on ordinary conversation with her,* &c. I see no reason, from the account given of her by this witness, why she was not competent as a witness to give evidence, through the medium of this witness as an interpreter, by signs. What more reason would it require to give *evidence* under oath, than to give *facts* without being sworn? The only question in the admission of her as a witness was, had she *sufficient reason?* If she had sufficient reason to have intelligence conveyed to her by the witness, and to communicate facts to the understanding of the witness, although she was not able to talk or write, she could have been sworn and testified through him by signs.

In *John Ruston's case,* (1 *Leach,* 455,) " A man deaf and dumb from his birth was offered as a witness on the part of the public on an information for grand larceny. Martha Ruston, his sister, being examined on the *voir dire,* it appeared that she and

her brother, for a series of years, *had been able to understand* each other by means of certain *arbitrary signs and motions,* which necessity had invented between them. She acknowledged that these signs were not significant of letters, syllables, words or sentences, but were expressive of general propositions and entire conceptions of mind; and that the subject of their conversation had been generally confined to the domestic concerns and familiar occurrences of life. She believed, however, that her brother had a perfect knowledge of the tenets of christianity, and was certain that she could communicate to him true notions of the moral and religious nature of an oath, and of the temporal dangers of perjury. The witness was objected to but admitted by the court, and sworn in the usual form. Martha Ruston was sworn well and truly to interpret to John Ruston the questions and demands made by the court to him, and his answers made to them."

It should, however, be understood, that I do not place my opinion as to the admissibility of the evidence objected to, upon the question whether the female witness was competent to testify, or not. In either case, I consider the evidence inadmissible upon principle. The view I have taken of it, I think is sustained by recent cases in the English courts; (*Reg.* v. *Gutridge,* 9 *Carr. & Payne,* 471; *Reg.* v. *Megson, id.* 428;) and I do not doubt that the true rule is, that when the person upon whom the offence is charged to have been committed is incompetent, by reason of infancy, idiocy, insanity and the like, to be sworn and give evidence as a witness, that no evidence of the assertions or declarations of such person, descriptive of the offence or the offender, can be received in evidence; and that the declarations of the person upon whom the injury has been inflicted in relation to it are only proper to be given in evidence to affect the credibility of the person, after having testified in the cause. I think the objection was well taken.

The judgment of the court of oyer and terminer must be reversed.