## THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENTS, *v.* WILLIAM CLEMONS, APPELLANT.

*Rape — what evidence will justify a conviction of it — proof that complaint was made after the offense, by the prosecutrix — the name of the person accused by her cannot be given.*

The facts of this case, as to the defendant's resistance, considered, and held to be sufficient to sustain the verdict of a jury convicting the defendant of rape.

Upon the trial the prosecutrix testified that the morning after the rape had been committed she went to the house of a neighbor and made a complaint and stated to the persons there present what had occurred. These persons were subsequently called as witnesses, and after stating that she came to the house on that morning were asked, substantially, " did Cora (the prosecutrix) at that time charge that upon the preceding night William Clemons (the defendant) made an assault upon her and forcibly had sexual connection with her? "

*Held,* that it was error to allow these persons to include in their testimony the name of the person whom the prosecutrix charged with having committed the rape.

That although it was difficult to see how the insertion or omission of his name in such testimony could in this case prejudice the defendant, yet as the verdict largely depended upon the credibility of the witnesses the judgment should be reversed and a new trial ordered.

APPEAL from a judgment of the Allegany Sessions, convicting the defendant of the crime of rape.

It was by the indictment alleged that the crime was committed on the person of Cora Tuttle. The occurrence on which the charge was founded, took place at the house of the father of the defendant, in Angelica, county of Allegany. The defendant was then eighteen years of age and Cora was of the age of thirteen years. She was an adopted child of the defendant's parents, and had lived in the family about five years. On the morning of the 4th day of September, 1882, the parents went away to be absent two or three days and left the defendant and Cora alone at the house. The evidence in support of the charge is in her testimony, which tends to prove that between nine and ten o'clock of that evening, he forcibly caught and threw her on to the bed in the sleeping room usually occupied by her, and against her will and consent did the act which is charged as the crime in question. The defendant, by his testimony, denies the charge, in all respects essential to such offense. And on the trial his counsel by motion and exception raised the question of the sufficiency of the evidence to justify a conviction of the offense.

By the judgment of the court, the defendant was sentenced to imprisonment for the term of seven years.

*Rufus Scott*, for the appellant.

*George U. Loveridge*, district attorney, for the respondents.

BRADLEY, J. :

It is contended on the part of the defendant, that in any view which may reasonably be taken of the testimony of the prosecutrix it was insufficient to warrant or support the verdict, for the reason that what the defendant did was without her resistance or subjection by threats. To support the charge of the crime in question, assuming that the prosecutrix was conscious and had possession of her mental and physical powers, it was necessary that she should resist to the extent of her ability and be overcome by the physical force of the defendant, unless she was by threats terrified into submission or was in a place and so situated that resistance would have been useless. (*People* v. *Dohring*, 59 N. Y., 374 ; 17 Am. R., 349 ; *Oleson* v. *State*, 11 Neb., 276 ; 38 Am. R., 366.)

The evidence does not show much active resistance on her part after she was thrown on to the bed. And the question arises whether in view of all the circumstances the evidence was sufficient to warrant the conclusion reached by the jury. The occurrence was in the night time, no person than these two were in the house. The prosecutrix had sought when she left the lower room to go to her's up-stairs to fasten the door leading into the stairway, but was required by the defendant to and did unfasten the door before she left it. It appeared that this door had uniformly been left unfastened nights when the family were in the house. The defendant's place to sleep while his parents were absent was below. He had no apparently legitimate reason to go up-stairs that night. He followed her up and she did not go to her room, but out of a window on to the roof of the house. It may be inferred that she did this to escape from him. Not finding her the defendant went down and outside the house, and by aid of a lighted lamp saw her on the roof. He again went up-stairs to the window and directed her to come into the house, and as she approached the window he grabbed her, pulled her in, blew out the light and threw her on to the bed. She hallowed, he put his hand over her mouth to stifle her noise, told her to shut up, and held her on the bed, and after the accomplishment of his purpose said to her that if she ever told of it he would kill her. The jury were not required to find that she at any time consented, or that she yielded, except to superior force, and they were at liberty to conclude that the force of the defendant applied was continued during the consummation of the act. But the evidence permitted the conclusion that she may have done more than she did by way of physical resistance on the occasion. So far as appears she had the free use of her arms and hands, and what use, if any, she made of them does not appear, nor does it appear that she could have made any effectual use of them by way of attack or resistance. She says he held her down; that she neither bit, struck or kicked him, or pulled his hair; that she was "scared." The offense required of her the utmost reluctance and the utmost resistance on her part. (*People* v. *Morrison,* 1 Park. Cr. R., 625; *People* v. *Quin,* 50 Barb., 128; *People* v. *Dohring, supra.*)

This rule is to be uniformly observed in cases of this character. But what is such resistance has relation to the circumstances attend-

ing the transaction. If she was overpowered by force and was unable for want of strength to actively resist any longer, or if such resistance was *absolutely* useless, the crime may have been committed. (*Reg.* v. *Hallett*, 9 Car. & Payne, 748; *Don Moran* v. *People*, 25 Mich., 356; 12 Am. R., 283; *Whittaker* v. *State*, 50 Wis., 518; 36 Am. R., 856.)

The evidence justifies the conclusion that the defendant intended to use all the force necessary, and overcome all resistance on her part to accomplish his purpose, that his assault was violent, and that his physical strength was superior to her's and sufficient to enable him to overcome all the resistance she could command; that he threw her on to the bed and held her there for such purpose. There does not appear to have been any threat or bodily injury to awe her into a helpless condition, but she says she was frightened and afraid of him and this fear arose at the time he followed her up-stairs and caused her to go on the roof, where she had never been before, and to hallow there (as may be inferred, for assistance and relief) without effect, and that such fear of him continued until he left her in the bed-room. It does not appear by any evidence that she was overcome by exhaustion or fear further than may be inferred from the circumstances and situation in which she was suddenly placed by the attack made upon her. That she was rendered helpless, and resistance absolutely useless after she was thrown upon the bed, does not appear other than by her statement that the defendant held her there, and the fact of his greatly superior strength. We find no evidence of any effort on her part then to release herself from him or to resist his attempt to have intercourse with her. It may be that his strength was so far superior to her's that she was but a feeble child in his grasp, and that the pressure of his weight upon her, and the force by which she was held in the situation in which she was, completely disabled her for any effectual resistance. The fact that it occurred in the night time with no other persons in the house, and with no means or opportunity or hope on her part of obtaining any assistance, may be entitled to some consideration. Her comparative weakness may have given her no hope of relieving herself from the infliction of the shameful wrong and injury which the defendant had the purpose and power to perpetrate upon her. If the situation was such that she was entirely

helpless to resist the act, and it was throughout against her will and consent, and without any submission on her part other than that which the force by him occasioned, it is difficult to see why the case did not properly go to the jury on the main charge in the indictment. If consent in any degree at any time of the occasion be yielded by the female the crime is not consummated, but the yielding to overpowering force may be submission and not consent. (*Reg.* v. *Fletcher*, Bell C. C., 63 ; 8 Cox C. C., 131 ; 5 Jur. [N. S.], 179.)

In this case it may be that the only thing that the prosecutrix could do was to protest and scream, which she was denied the opportunity of doing by the pressure upon her mouth of the hand of the defendant. And it may be that his physical strength enabled him to apprehend interruption only from her ability to make an outcry, and hence he subdued her means of doing that. Both of these persons appeared and testified before the jury, who had the opportunity to observe their apparent relative strength and physical vigor, and in view of the evidence could appreciate the opportunity of the girl of thirteen years to resist or escape the purpose of the young man of eighteen years under the circumstances. And there is some evidence tending to prove that their relation was such that he assumed to direct or command her actions and to require obedience. What, if any, influence in view of their respective ages that had upon her was also for the consideration of the jury.

On the whole the evidence was sufficient to go to the jury. And while it was by no means conclusive it was sufficient for their consideration on the question of the main offense charged against the defendant. The question of credibility of the prosecutrix was for them, and we cannot say that the jury were not justified in giving credit to her statement as a witness. And so far as the early complaint by a person so injured may be taken for that purpose, they had that to support her credibility, as it appears that she announced it the next morning to a neighboring family. The court fairly submitted the case to the jury with ample instructions as to the rule within which the alleged act must be brought by the facts proved and found, to permit them to find the defendant guilty of the crime of rape. And we think their verdict was supported by the evidence " Having carnal knowledge of a woman by force and against her

will " is the common-law definition of the crime. And the statute defining it as " forcibly ravishing any woman of the age of ten years or upwards " (2 R. S., 663, § 22) imports the same.

The jury were justified in the conclusion that the act was accomplished forcibly and wholly against the will or consent of the prosecutrix. ( *Woodin* v. *People*, 1 Park. Cr. R., 464.)

The prosecutrix testified that the next morning she went to the house of a neighbor and made complaint and stated to the persons there what had occurred. Those persons were afterwards called as witnesses, and after stating that she came there that morning were asked substantially the question : Did Cora, at that time, charge that upon the preceding night William Clemons made an assault upon her and forcibly had sexual connection with her? Which was objected to as immaterial and incompetent, and not proper to prove what she said. Exception was taken to the admission of this evidence and the answers of the witnesses were in the affirmative.

The contention is that it was error to permit the question answered to embrace any statement of the facts complained of by the prosecutrix, or the name of the person by her there charged with the act. In a case of this character the omission of a prosecutrix to promptly make complaint of the wrong which she has suffered, may be taken as a circumstance against the credibility of her statement as a witness against the prisoner, unless delay in doing it is reasonably excused. (*Higgins* v. *People*, 58 N. Y., 377.)

It is therefore competent to prove by the witness to whom made that she did make such complaint. Such proof is not and cannot be treated as any evidence of the fact so stated, but is admissible only upon the question of her credibility. And therefore can be received only when she has testified as a witness. (*People* v. *McGee*, 1 Denio, 19 ; *Baccio* v. *People*, 41 N. Y., 265.) The cases are not uniform as to the extent of the inquiry which may be put to and answered by the witness to whom such complaint is made. The rule in some of the States permits a full statement in detail of the facts communicated by and embraced in the complaint to be given by the witness. It is such in Connecticut (*State* v. *De Wolf*, 8 Conn., 93 ; 20 Am. Dec., 90; *State* v. *Kinney*, 44 Conn., 153 ; 26 Am. R., 436); in Tennessee (*Philips* v. *State*, 9 Humph., 246 ; 49 Am. Dec., 709; *Benstine* v. *State*, 2 Lea., 169 ; 31 Am. R., 593); and in Ohio

(*Johnson* v. *State*, 17 Ohio, 593 ; *Laughlin* v. *State*, 18 id., 99 ; 51 Am. Dec., 444). The rule in England for many years has been more restrictive, and does not permit the admission on the part of the prosecution upon the trial of the statement so made by the prosecutrix to any extent further than that she made complaint of an outrage upon her person. The name of the person who did it, or the place where done, as declared by her at the time of making such complaint is not admissible, nor is any other than the general fact embraced within it, and such is the rule in some of the States. (*Rex* v. *Osborne*, Car. & M., 622 ; *Reg.* v *Megson*, 9 Car. & Payne, 420 ; *Rex* v. *Clarke*, 2 Stark, N. P., 241 ; *Reg.* v. *Walker*, 2 M. & Rob., 212 ; *Reg.* v. *Mercer*, 6 Jur., 243 ; *Oleson* v. *State*, 11 Neb., 276 ; 38 Am. R., 366 ; *State* v. *Thompson*, 38 Ind., 39 ; *State* v. *Richards*, 33 Iowa, 420).

And such limitation has been declared and adopted in this State. (*Baccio* v. *People*, 41 N. Y., 265.) And the governing rule here must be deemed such that the particulars of the complaint made by the prosecutrix to a third person, in the absence of the person charged, are not, to any extent, admissible in chief upon the trial, but that the fact that complaint by the prosecutrix of the outrage, giving the nature of it, was made may be received. And it may also be shown that the name of the person complained of, and other particulars, were mentioned by her to the witness, but what was stated in those respects is not admissible.

In *Rex* v. *Osborne* the statement of the name communicated of the person complained of was excluded, and the same was the effect of *Reg.* v. *Megson*. The doctrine of these cases seems to be approved in *Baccio* v. *People*. The principle upon which this proposition rests is that the evidence of the declarations of the prosecutrix are not admissible in such cases to prejudice the defendant, but her complaint may be proved merely to show that she did not silently submit to the act afterwards charged against him, as bearing upon the question of her good faith in the criminal proceeding, and thus having relation to her credibility only. And this limitation is so applied that the general rule which excludes *ex parte* declarations of one person against another, may not be intrenched upon further than the purpose which permits the introduction of the general complaint, timely made by the prosecutrix in this class of cases,

requires. That she makes complaint is the fact rather than what she says in making it. Within the doctrine of the Baccio case, by which we must be governed here, the inclusion of the defendant's name in the inquiry, put to the witnesses called to verify the fact that she made complaint of the injury, was error. That was a particular fact beyond a mere complaint of the injury. While the questions put to the witnesses were not in the approved form, they do not necessarily import anything more than might be embraced in an inquiry properly made, except by the inclusion of the name of the defendant. And that was of no importance for the legitimate purposes of the inquiry. It is difficult to see how the effect upon the prisoner in this case was anything more or different than it would have been with the name omitted from it, or that he could be prejudiced by it, but in a close case when the question upon which the verdict of the jury largely depends is one of credibility of witnesses, it cannot, as matter of law, be said that some impression may not have been made by, and some prejudice have resulted from, the evidence that she declared the morning after the alleged commission of the offense, that he was the person who did it and the manner in which he did it. In coming to the conclusion that this was error, we do not consider the propriety or utility of the rule of limitation of the inquiry , nor express any views which might be entertained in that respect if the question were deemed an open one in this State. We now see no reason why the evidence of the appearance and condition of the prosecutrix that morning when she called upon the neighbor was not competent, and think it was so. (*Rex* v. *Clarke*, 2 Stark. N. P., 241.) It is unnecessary to consider any other question presented, as there were no others which seem to have any substantial importance or which may necessarily arise on another trial.

The judgment and conviction should be reversed and a new trial ordered.

SMITH, P. J., and BARKER, J., concurred.

Judgment and conviction reversed and new trial ordered in the Court of Sessions of Allegany county, to which court the proceeding are remitted.