## JIM REDDICK v. THE STATE.

*No. 875.   Decided February 19th, 1896.*

**1.   Rape—Evidence—Complaints by Prosecutrix.**

On a trial for rape, the State may show by the prosecutrix, or other witnesses, that she made complaint of the outrage recently after its commission, and when, where and to whom it was made.   But the prosecution will not be allowed to prove the name of the person charged with the crime, nor the particulars, as narrated by her; the practice being, merely to ask whether she made complaint that such an outrage had been perpetrated upon her, and to receive, in answer, only "yes" or "no."   Such statements and complaints are only corroborative of her testimony, and not evi-

dence of the fact upon which the jury can find the defendant guilty. And when the prosecutrix is not a witness in the case, such evidence is wholly inadmissible.

### 2. Same—Purpose of Such Testimony.

The great weight of authority holds, that the admission of the statement of the prosecutrix, made soon after the outrage, is only for the purpose of corroborating or sustaining her testimony.

### 3. Same.

If the defendant attempts to prove that the proecutrix charged some one else with the crime or said that she did not know who was the guilty party; or, if he attempts to prove that her testimony, as to his being the man, has been recently fabricated; or, if he attempts to show that improper influences have been brought to bear upon her or any other witness to accuse him of the crime, then, and in either of such cases, it is competent and admissible for the State to prove that soon after the transaction the prosecutrix had charged and stated that the defendant was the party who had committed the outrage upon her.

### 4. Same—Identification of Defendant—Acts and Conduct of Prosecutrix.

On a trial for rape, where the State was permitted, as original evidence, to prove by the sheriff of the county, that after defendant's arrest he placed defendant and eight other negroes in a line in the jail and then brought the son of the prosecutrix into the jail, and that he identified and pointed out the defendant as the man who had committed the rape upon his mother; and, that at the same time and place, and under the same circumstances, the prosecutrix also identified and pointed out the defendant as the man who had raped her, and that the prosecutrix fainted. Held, that the evidence was wholly inadmissible as original evidence. Overruling, Bruce v. State, 31 Tex. Crim. Rep., 590; Ruston v. State, 4 Tex. Crim. App., 432; Fulcher v. State, 28 Tex. Crim. App., 471; Rippey v. State, 29 Tex. Crim. App., 38, in so far as they antagonize the rule here laid down.

APPEAL from the District Court of Brazos.   Tried below before Hon. A. C. BREITZ, Special Judge.

Appellant was convicted in the court below of the rape of one Fannie Polazo, with his punishment assessed at death.

Fannie Polazo, the prosecutrix, testified in substance, through an interpreter, she being an Italian woman and unable to speak English, that her husband was in the lunatic aslyum, at Austin, and had been there several years.   That she and her children lived upon a place which she owned, about two and one-half miles from the city of Bryan.   That at 3 o'clock, by her clock, a time piece, on Saturday night, December 2nd, 1894, the defendant (whom she points out in court) came to her house, and, after knocking at her door, which her son partially opened, pushed it open and came into the room; came to her bed; drew a pistol, pointed it at her and asked her for money.   And when she told him she had none, he threw her back on the bed, got on top of her and tried to pull up her clothes.   That she and her son, Charlie, both fought him all they could, and defendant then dragged her out of the house into the yard, where he again threw her down, got on top of her and succeeded in ravishing her. That during their struggles defendant bruised her and also bit her on the breast; that there was a light in the room, of a lamp which she had lit when defendant first knocked at the door.   And, she recognized the defendant by the lamp-light, she having seen him once before, about a year ago, at her house, he having worked on an adjoining place to hers, where she had several times seen him at a distance, but not

close.   She stated that defendant stayed at her house nearly two hours. On the next morning early, she went over to the house of her brother-in-law, Joe Polazo, and told him and his wife of the outrage which had been committed upon her.

Charlie Polazo testified, in substance, the same as did his mother, Fannie Polazo, as to what transpired at the time of the rape.   He says: "I knew the man who came there that night and outraged my mother. Have seen the man pretty often.   I saw and recognized him by the light of the lamp; a small tin lamp which was then burning in the room; could see the man well—there he is (points the man out in court).   I know that he is the man that outraged my mother."   This witness stated that defendant stayed at the house a half hour, and that when he left it was nearly daylight.

Mary Polazo, testified: That she was a sister-in-law of the prosecutrix; that prosecutrix came to her house on Sunday morning and informed her that she had been outraged and raped the night before; and that a man, who made a crop near her place the year before, was the man who raped her.   That she examined the body of prosecutrix, and found some bad bruises on her body and a bite on her breast.   That prosecutrix and her children were all crying, and seemed to be in great distress.   That witness and her husband lived about a mile from prosecutrix, and there were no other Italians living nearer to her than themselves.

Joe Polazo testified substantially as did his wife, Mary Polazo.

T. C. Nunn, testified:   "I am sheriff of Brazos County, and held that office December last.   On Sunday morning, December 3rd, 1894, Joe Polazo came to Bryan and informed me that a rape had been committed on Fannie Polazo, an Italian woman.   She lives two and one-half miles northeast of Bryan.   I went to her place at once and she gave me a description of the man who had raped her.   She told me it was one of the negroes who had made a crop near her the year before, but did not know the name.   From this description, I arrested the defendant and John Eaveryhart, and Earl Eaveryhart.   I went on Sunday night and located the parties, but did not make the arrest until the next day.   I had Mr. Tom Closs with me; he went into the house where the parties were and talked with them; but I did not let myself be known to them. I arrested the defendant in Bryan the next day; also the two Eaveryhart boys, and put them in jail.   I then sent for Fannie Polazo, and after putting defendant, the two Eaveryhart boys and five other negroes in a line, in jail, standing side by side, with defendant in about the middle of the line, I had Fannie Polazo brought in the jail to where the parties were, and she at once pointed out the defendant as the man who committed the rape on her.   As soon as she saw him, she bit her thumb and seemed to faint, and would have fallen had not some one of the parties present caught her.   I then rearranged the negroes in a line, and had Charlie Polazo brought in; he seemed to hesitate a little, but pointed out the defendant as the man who outraged his mother."

Cross-examination:   "I am not sure that Fannie Polazo fainted, but

she exhibited considerable emotion when she saw defendant; and I think she would have fallen had some one not caught her. No one spoke to her after she entered the jail until after she had pointed out defendant. She did not hesitate, but pointed him out at once. There were other Italians in the jail when she came in. The boy, Charlie Polazo, hesitated a short time before he pointed out the defendant. I do not remember whether or not any one spoke to him after he entered the jail before he pointed the defendant out. I do not speak or understand the Italian language. I arrested the defendant in Bryan, on Monday, after the offense was committed."

The defense was an alibi, and the facts testified to, by about thirteen witnesses for the defendant, was, in substance, that on the Saturday night in question, defendant attended a dance at Webb Crawford's, seven and one-half miles from the city of Bryan. That he went to the dance in a buggy with one Jane Franklin, and there were several other parties in buggies, who accompanied them. That the dance broke up about 2 o'clock, a. m., and that all these parties returned together to the city of Bryan; where they reached the house of one Harrison about 3 o'clock, where the defendant remained until 4 o'clock, when he went back to the livery stable and returned the buggy which he had hired.

Ben Jackson testified: "That when defendant reached the stable, it was fifteen minutes after 3'oclock by a watch which he, the witness, got and looked at. That when defendant returned the buck-board he had hired, to the stable, he saddled his horse and rode off; was gone about twenty minutes, when he returned to the stable and remained with me all night, and helped me feed the horses between 4 and 5 o'clock; that he then went off to Billy Cunningham's saloon to get a bottle of whiskey, but that the saloon being closed, defendant could not get in, and he (defendant), went on up the street and witness saw him no more.

Billy Cunningham testified: "That at good daylight he saw the defendant standing on the corner of Main street in Bryan, called "Rat Row." Several of defendant's witnesses testified that he had on a yellow-striped coat, on the night in question. The prosecuting witnesses having testified that the party who committed the outrage was wearing a black coat, black pants and overcoat, and a blue shirt.

Defendant saved bills of exception to the testimony of Sheriff Nunn, as to what occurred at the jail, with regard to the identification of defendant by the State's witnesses, Fannie Polazo and Charlie Polazo, the testimony having been objected to at the time it was introduced.

*Ford & Nall*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellant was convicted of rape, and his punishment assessed at death, and he prosecutes this appeal. Upon the trial, over the objection of the appellant, the State was permitted to ove the following facts, by T. C. Nunn, sheriff of Brazos County:

That on Monday, after the alleged rape of Fannie Polazo, and after defendant had been arrested for said offense, he placed defendant and eight other negroes in a line in the jail of Brazos County, and then brought Charley Polazo into said jail, and that he identified and pointed out defendant as the man who had committed the rape upon Fannie Polazo. The State was also permitted to prove by Sheriff Nunn, that at the same time and place, and under the same circumstances, Fannie Polazo, the prosecutrix, was carried into the jail, and she identified and pointed out the defendant as the man who had raped her and bit her thumb; and that the said Fannie fainted, and would have fallen had she not been caught and held up by others. These facts were introduced in evidence as original testimony. Were they admissible as original testimony? On the next morning after the rape, the prosecutrix related what had occurred to her brother-in-law, Joe Polazo, and his wife. Some of the details were permitted to be proven by Polazo and wife. To this there was no objection. If an objection had been interposed, we might revise the action of the court in permitting the State to introduce as original testimony any of the details attending the rape; the rule being that, as original testimony, the prosecution can prove that the woman charged to have been outraged complained of the outrage. This is admissible, whether res gestæ or not, as a part of the State's case. A very clear statement will be found in Thompson v. State, 38 Ind., 40, which states: "That the prosecution may show by the testimony of the prosecuting witness, or that of other witnesses, that she made complaint of the outrage recently after its commission, and when, where, and to whom it was made. That the prosecution will not be allowed to prove the name of the person charged with the crime, or the particulars as narrated by her, the practice being merely to ask whether she made the complaint that such an outrage had been perpetrated upon her, and to receive in answer only, simply, yes or no. That such statement is only corroborative of her testimony, and is not evidence of the fact upon which the jury can find the defendant guilty; and, when she is not a witness in the case, it is wholly inadmissible." See Bish. Crim. Proc., § 912; Reg. v. Osborne, Car. & M., 622; Reg. v. Megson, 9 Car. & P., 420; Reg. v. Alexander, 2 Craw. & D., 126; People v. McGee, 1 Denio, 19; Stephen v. State, 11 Ga., 225; Johnson v. State, 17 Ohio, 593; Laughlin v. State, 18 Ohio, 99; Weldon v. State, 32 Ind., 81; Roscoe on Crim. Ev., 24. Mr. Greenleaf says: "Though a prosecutrix may be asked whether she made complaint of the injury, and when and to whom, and the person to whom she complained is usually called to prove that fact, yet the particular facts which she stated are not admissible in evidence, except when elicited on cross-examination, or by way of confirming her testimony after it has been impeached. On the direct examination the practice has been merely to ask her whether she made complaint that such an outrage had been perpetrated upon her, and to receive only, simply, yes or no. Indeed, the complaint constitutes no part of the res gestæ. It is only a fact corroborative of the testimony of the complainant. Where she is

not a witness in the case, it is wholly inadmissible." See 3 Greenl. Ev. (15th Ed.), § 213. Mr. Taylor, in his work on Evidence, says, "That in no case can the particulars of the complaint be disclosed by witnesses for the crown, either as original or confirmatory evidence, but the details of the statement can only be elicited by the prisoner's counsel on cross-examination"—citing Reg. v. Walker, 2 Moody & R., 212; Reg. v. Osborne, Car. & M., 622; Reg. v. Quigley, Ir. Cir. R., 677. Mr. Phillips (volume 1, p. 149, Cow. & H. & E. Notes) says: "In prosecutions for rape or for assault with intent to commit rape, proof of the fact that the prosecutrix made complaint soon after the commission of the alleged crime is admissible, and indeed is generally required; but the particulars of the complaint made cannot be admitted in evidence as to the truth of her statement. The particulars stated, as to the violence used or the person who committed the violence, cannot be received. The evidence should be confined to the bare proof of the fact that the complaint of personal violence was made, and that an individual was charged, without mentioning his name"—citing Reg. v. Walker, 2 Moody & R., 212; Rex v. Wink, 6 Car. & P., 397; Reg. v. Megson, 9 Car. & P., 420; Reg. v. Osborne, 2 Car. & M., 622; Reg. v. Nicholas, 2 Car. & K., 248. This precise question came up in Pefferling v. State, 40 Texas, 487; and the Supreme Court of this State reversed the judgment upon the ground that the brother of the prosecutrix was permitted to swear to a detailed statement made by the prosecutrix (his sister). Judge Moore, speaking for court, says: "It is, we think, well established by reason, as well as the great weight of authority, that proof of the particulars of the complaint and the detailed statement of the alleged facts and circumstances connected with it, as was permitted in this case in the court below, cannot be admitted as original evidence to prove the truth of the statement testified to by the injured party, or to establish the charge made against the prisoner." What was said by this court in Ruston's case, 4 Tex. Crim. App., 432; Fulcher's case, 28 Tex. Crim. App., 471; Rippey's case, 29 Tex. Crim. App., 38, and Bruce's case, 31 Tex. Crim. Rep., 590, in so far as they antagonize the rule here laid down, is expressly overruled. We deem these citations amply sufficient to support the proposition that, as original testimony, nothing but the complaint and the parties to whom related, as stated in the Indiana case above, are admissible. We are not to be understood as holding that the State will not have the right to prove as original testimony that the prosecutrix complained of the outrage, to whom she made complaint, and that she, of course, charged some one with the crime; but we are to be understood as holding that the name of the party charged cannot be given, and that the circumstances of violence cannot be proven in this way. But, when a certain character of attack is made upon the testimony of the prosecutrix by the defense, the particulars of the offense may be proven by the State. If the defendant attempts to prove that she charged somebody else with the crime, or that she said that she did not know who was the guilty

party, the State would have the right to show that, soon after the transaction, she charged the defendant with being the person. If the defendant attempts to prove that her testimony has been recently fabricated, as to defendant being the man, the State would have the right to show that she had stated, soon after the transaction, that the defendant was the man. If the defendant attempts to show that improper influences have been brought to bear upon the prosecutrix, or any other witness, to accuse the defendant of the crime, the State would have the right to prove that, before these influences were applied, she told the same tale as she swears to now upon the trial. Except as to the right to prove her complaint, the prosecutrix in a rape case stands precisely on the same ground, and no better, than a witness in any other case. See Bailey v. State, 9 Tex. Crim. App., 98; Williams v. State, 24 Tex. Crim. App., 637; Dicker v. State (Tex. Crim. App.), 32 S. W. Rep., 541. Now, as we have above stated, the prosecutrix complained of the outrage to her brother-in-law on the next morning after the alleged rape. Some of the details were proven, but there was no objection. This was more than the State had a right to, until she was attacked. If appellant had objected to the introduction of the details in this matter, reserving his bill, then we would have held that there was error in admitting them. The conduct of the sheriff, the fact that the prosecutrix and the boy, in the jail, identified the defendant as the man who committed the crime, were not a statement or complaint of the prosecutrix soon after the transaction, which had already been made; and, if it had been the first time that she had recognized the defendant, it would have been clearly inadmissible. All that could have been proven was that she complained of the outrage. These remarks apply to the prosecutrix. We are not aware of any authority that will admit in evidence the fact that the boy recognized the defendant. Certainly, no law permits his complaints to be admitted in evidence. Of course, if his testimony had been attacked in the manner above indicated, the State could prove that he recognized the defendant soon after the transaction. We are not aware of any authority to admit in evidence such conduct as is described in this bill of exception. The circumstances under which the identification was made, the fact that the prosecutrix fainted—if there be any authority for such testimony, we have found it in no book, except in the Bruce case, supra. The defendant upon the trial below made no attack such as above described upon either of the witnesses. There was no effort to show that she had charged somebody else with the crime. There was no offer to show that her testimony was recently fabricated, and none to show that she testified under the influence of improper motives. And, unless this was shown, this testimony could not have been introduced for the purpose of supporting the witnesses. The great weight of authority holds that the admission of the statement of the prosecutrix, made soon after the outrage, is only for the purpose of corroborating or sustaining her testimony. We are of opinion that there was error in this matter of a very material character. A number of witnesses swore to facts which,

if true, tended very cogently to show that the defendant was not present at the time the rape was charged to have been committed. The only issue in this case was as to the identity of the party who committed the offense. Hence the reception of this testimony was calculated very powerfully to induce the jury to believe that, because the prosecutrix fainted on recognizing the defendant one or two days afterwards, therefore he must have been the man. For the error above discussed, the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*