**GRIFFITH v. STATE.**

No. 21683.

Court of Criminal Appeals of Texas.

Nov. 5, 1941.

Roy Creighton, of Mineral Wells, and Marvin B. Simpson, Robert Harrison, and Marvin B. Simpson, Jr., all of Fort Worth, for appellant.

Sam Cleveland, Dist. Atty., of Granbury, and Spurgeon E. Bell, State's Atty., of Austin, for the State.

KRUEGER, Judge.

The conviction is for the offense of an assault with intent to rape. The punishment assessed is confinement in the State Penitentiary for a term of two years.

Appellant seriously challenges the sufficiency of the evidence to justify and sustain his conviction.

The evidence offered by the State, briefly stated, shows that appellant at the time in question was engaged in the restaurant business in the town of Mineral Wells, Texas. On the afternoon of Saturday, August 17, 1940, Betty Carol Price, a girl about nine years of age, entered appellant's place of business to get a drink of water. While there, appellant gave her some candy and invited her into the wash room, stood her on a box and attempted to have sexual intercourse with her. The girl testified that there was a curtain hanging over the passage-way between the cafe and the wash

room; that after appellant had attempted to have sexual intercourse with her, she went to the picture show and returned home about 5:30 P. M., at which time she related the occurrence to her mother. Doctor Evans, who examined the girl within a very short time after the alleged occurrence, was called as a witness by the state. He testified that all he found was a little redness or congestion on the lips of her vulva, not the vagina; that she had not been penetrated; that a man could not have entered her privates without serious damage to her; that he did not know what caused the condition which he found, but that there are various causes which might have produced it. For instance, an unsanitary condition, heavy acid urine or heavy alkaline urine. The girl was fat, carried considerable flesh which in warm weather would be conducive to such condition unless hygiene was well kept. The mother of the girl was called as a witness. She related what the girl had told her and testified that she observed the girl's private parts and saw swelling and redness.

Appellant took the witness-stand and denied any attempt on his part to have sexual intercourse with the girl. He admitted that the girl came into his place of business at the time stated by her; that she asked for a drink of water as she had done theretofore on many occasions; that he gave her some candy and a dime to go to the show; that thereafter, about 5:30 or 6 P. M., she came back, but as he was busy at the time he did not talk to her; that Miss Davis (now Mrs. Hatzfeld), who was employed by him as a waitress, talked to the little girl. Mrs. Hatzfeld testified that about 5:30 P. M., the girl came to the cafe to get a drink of water; that there was nothing unusual in her appearance or demeanor. Appellant, as well as all of his employes, denied that there was any curtain over the passageway between the cafe and the wash room. They further testified that there were glass doors to the restaurant which were open at the time in question, but, whether open or closed, any person from the outside could look into the wash room and see what was going on therein. This was not controverted by the State. Appellant proved that he was 48 years of age; that he had lived in Mineral Wells for more than twelve years and had a good reputation as a peaceable, law-abiding citizen; that he had never been charged with an offense against the laws of this state.

■■ It will be observed from the brief statement of the testimony that an issue of fact was raised which the jury, who are the exclusive judges of the facts, the credibility of the witnesses and the weight to be given to their testimony, decided adversely to him, and we would not be justified in disturbing their finding.

By bill of exception No. 1 appellant complains of the action of the trial court in permitting the State to prove by Mrs. Blaine Price, mother of the prosecutrix, that the girl came home crying on the day in question at about 5:30 or 6 P. M.; that she inquired of her what was the cause thereof; that the girl told her "that man (meaning defendant) did something to me"; that when she questioned her the the prosecutrix told her the whole story. Appellant objected to the testimony, which objection was overruled by the court and the defendant excepted. Thereupon, the examination continued as follows:

"Q. Go ahead, Mrs. Price. A. She said she went to get a drink as she started to buy her ticket to the show, and said she asked Mr. Griffith for a drink, and he said, 'Get it out of the fountain', and he then asked her if she wanted some candy, and she, of course, took it, and then he took her back in the back, through a door, and stood her on a box, with a curtain down over the door. She said he stood her on a box with her back against the wall, and pulled her pants down, and she said he was wearing an apron and he used his hand part of the time and his bad thing part of the time, and when he used his bad thing he had his hands behind her back."

■ Appellant objected to this testimony on the ground that it was hearsay; that it was made out of the presence of appellant and was not res gestae. The court overruled the objection and admitted it on the theory that it was res gestae. We are of the opinion that in admitting this testimony the trial court erred. Approximately two hours had expired from the time the alleged offense was committed until the statement was made by her to her mother. Of course, the element of time is not the only factor by which to determine whether a statement comes within the rule of res gestae. But the record shows that the prosecutrix went to appellant's place of business about 3:30 P. M., got a drink of water, some candy and a dime, and then went to a moving picture show, where she

remained for over an hour. At no time while on her way to or from the show, or at any time while at the show, did she cry or appear to be excited or show any unusual demeanor. The test by which to determine whether a statement comes within the classification of res gestae is spontaneity or instinctiveness. In the instant case, there seems to be such a break or let down between the statement and the transaction which it purports to detail as evidences a want of spontaneity. However, we do not wish to be understood as holding that a report of the occurrence by the girl to the mother was inadmissible, but the details thereof are inadmissible under the circumstances shown here. See Bedgood v. State, 109 Tex.Cr.R. 104, 3 S.W.2d 99; Hazzard v. State, 111 Tex.Cr.R. 539, 15 S.W.2d 638; Eubanks v. State, 116 Tex.Cr.R. 550, 32 S.W.2d 463; Reddick v. State, 35 Tex.Cr.R. 463, 34 S.W. 274, 60 Am.St.Rep. 56.

By bill of exception No. 2 appellant complains of the testimony given by the mother of the prosecutrix to the effect that when the doctor made the examination of the girl she (the witness) observed some swelling and redness on the private parts of the girl. We think it was permissible for the mother to testify as to what she saw or observed.

By bill of exception No. 4 appellant complains of the action of the trial court in permitting the State, on cross-examination of the appellant, to ask him how many other girls besides Betty Carol Price he had kissed when they came into his place of business. Appellant objected to this question and the answer sought to be elicited on the ground that the same was highly prejudicial and inflammatory and was the introduction of extraneous matters for which he had neither been arrested, indicted nor charged. The court overruled the objection and appellant was required to answer. That this testimony was prejudicial is self-evident. However, the record discloses that the appellant himself offered the same kind and character of testimony. Hence he cannot complain of the action of the State in producing testimony, although objected to, which is similar in kind and character to that given by himself.

Appellant urged quite a number of objections to the court's charge, and especially to paragraph No. 3, wherein the court defined rape as "The carnal knowledge of a woman without her consent, obtained by force, threats or fraud, or the carnal knowledge of a woman other than the wife of the person having such carnal knowledge with or without consent, and with or without use of force, threats or fraud, such woman being so mentally diseased at the time as to have no will to oppose the act of carnal knowledge, the person having carnal knowledge of her knowing her to be so mentally diseased; or the carnal knowledge of a female under the age of fifteen years, other than the wife of the person, with or without her consent, and without the use of force, threats or fraud."

The appellant's objection to the charge seems to be that there were no threats or fraud charged to have been employed by the defendant in the commission of the offense; nor was the female alleged to be so mentally diseased at the time as to have no will to oppose the act of carnal knowledge, etc. We do not see any necessity for the court, in defining what constituted rape, to have embodied in the definition of the term threats, fraud or that such woman was so mentally diseased as to have no will to oppose the act. It seems that the better and safer course for the court to follow in defining rape is to confine it to the facts which constitute the offense as charged in the indictment. However, in paragraph 7, the court, in applying the law to the facts, charged the jury that if they believed from the evidence, beyond a reasonable doubt, that the defendant did, as charged in the indictment, on or about the 17th day of August, A. D., 1940, in the County of Palo Pinto and the State of Texas, unlawfully make an assault upon the said Betty Carol Price a female, as the term is hereinabove defined, with the intent, then and there, by such assault and with or without violence and force, to have carnal knowledge of her, the said Betty Carol Price, with or without her consent, to find him guilty as charged in the indictment. We do not believe that the charge, when considered as a whole, misled the jury in determining the question of appellant's guilt from the facts before them.

For the error pointed out, the judgment of the trial court is reversed and the cause remanded.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.