James ANDERSON, Appellant,

v.

STATE of Texas, Appellee.

No. 13–81–307–CR.

Court of Appeals of Texas, Corpus Christi.

Feb. 11, 1982.

Charles W. Medlin, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

Before NYE, C. J., and UTTER and KENNEDY, JJ.

## OPINION

NYE, Chief Justice.

The appellant was convicted of the offense of aggravated rape. The jury as-

sessed punishment at 99 years confinement in the Texas Department of Corrections. Appellant brings five grounds of error.

In support of its case in chief, the State offered into evidence the testimony of the prosecutrix in which she testified that she identified the appellant before trial in a "one-to-one show up" conducted by the police. The State then offered into evidence jewelry belonging to the prosecutrix which was taken from the person of the appellant as an incident to his arrest.

■ Ground of error two in appellant's brief reads as follows:

The trial court committed reversible error and violated appellant's rights under the Fourth Amendment To the United States Constitution in allowing the complainant to testify about her pretrial identification of the appellant because said identification was the fruit of an illegal arrest.

He brings the above ground of error forward based on the following trial objection:

Your honor, the objection is to bringing and the holding of a single person showup or lineup as it were out there under the conditions then existing. The young lady, very naturally was on the verge of hysterics and we feel that this is not the proper show-up. The witness has identified the man in Court. We think that any identification made by her out there on the evening is violative of the rights of this defendant against self-incrimination against the Eighth, Thirteenth and Fifteenth Amendments to the Constitution and for those reasons we object to this identification.

Appellant's ground of error does not comport with the trial objection and therefore presents nothing for review. *Bouchillon v. State,* 540 S.W.2d 319 (Tex.Cr.App.1976). The second ground of error is overruled.

■ The prosecutrix testified that in the course of the rape attack certain pieces of her jewelry were taken from her by the appellant. When the State offered the testimony of Officer Jones to show that this jewelry was seized from the person of appellant incident to his arrest, appellant made the following objection:

I want to object to any reference to or result of or conduct of any search made on this defendant as being intrusive entry of his constitutional rights against the Fourth Amendment guaranteed him by the Constitution of the United States, against unlawful search and seizure. Object to it on those grounds.

In ground of error four (the ground of error relating to this objection), appellant contends that "The trial court erred in failing to suppress items of jewelry obtained by a search of appellant incident to an unlawful arrest." To preserve error, an objection must be specific and must state the ground of the objection. *Vela v. State,* 516 S.W.2d 176 (Tex.Cr.App.1974); *Evans v. State,* 480 S.W.2d 387 (Tex.Cr.App.1972). Specific objections are required for two reasons: first, to inform the trial judge the basis of the objection and to afford him an opportunity to rule on it; and second, to afford opposing counsel an opportunity to remove the objection or supply other testimony. *Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Cr.App. 1977). Appellant's objection was not specific. It did not put the trial judge nor the prosecutor on notice of the manner in which the appellant contended the search and seizure was in violation of the Fourth Amendment. We hold that the objection was insufficient to preserve error.

■ Even if the objection had been made on specific grounds, no error is shown. Earlier in the trial, the following facts and circumstances surrounding the arrest of appellant were developed in a preliminary hearing outside the presence of the jury.

Around 7:30 on the evening of March 14, 1979, Diana Fletcher (the complainant) and Roy Hankins, two 14-year-old students, were walking together in a residential neighborhood of West Houston, when a man stopped his car, ran up to them and grabbed the girl by the hair. The man then pulled a gun and told her friend, Hankins, to run. When the boy did not move, the man shot him in the face, causing him to fall backwards into the street. The man then dragged the girl to his car, put a gun

to her head and took her to a secluded wooded area nearby. There he forced her to engage in sexual intercourse and oral sodomy with him. A police helicopter with spot lights spotted the car. The man forced the girl out of the car in an attempt to hide in the woods. He then returned to his vehicle and fled, leaving the complainant behind. The girl, naked, ran to the home of Mrs. Betty Moray, where she arrived at about 8:00 p. m.

The police helicopter was able to maintain visual contact with the suspect's vehicle from the scene of the crime to an apartment complex a few miles away where the suspect abandoned the vehicle and fled on foot. Although they lost the suspect, they kept the suspect's vehicle in sight and directed ground units to the suspect's vehicle. A check of the car's registration revealed that it was owned by the appellant. The police then went to appellant's apartment a few blocks away, informed him that they had his car in custody and asked him if he would go with them to clear up some suspicions regarding his vehicle. Appellant agreed and was taken by the officers to the residence of Mrs. Moray, where the appellant's car had been brought by the police. The officers informed appellant of his *Miranda* rights before arriving at the Morays' home. It was there that the girl identified the appellant's vehicle and the appellant as the person who raped her. After this identification, appellant was placed under arrest. A search of his person by peace officers followed. They found on his person the jewelry that had been taken from the prosecutrix during the rape.

The officers who brought the appellant to where the car was parked testified that they were not aware of the nature of the crime, if any, at the time they arrived at appellant's apartment. They related that appellant accompanied them voluntarily in response to their explanation that his car was in custody in connection with its involvement in a crime, and their inquiry as to whether "he would like to go to the scene and get the matter straight." Officer Acker testified further to the effect that his participation was strictly in an investigative posture, and that the appellant was never in custody or under arrest until after the victim identified her assailant. He went on to state, "We got in the patrol car, and from what we could understand from the talk on the radio, it involved something serious. We gave him his legal warning. My partner read it from the blue card and we went back to the scene." Officer Acker also testified that he never at any time threatened appellant in order to get him to go with him. There is no evidence in the record to suggest that appellant was compelled to accompany or remain with the police.

Appellant argues in his brief that he was under arrest when he accompanied the officers to the place where the prosecutrix identified him. He argues that such arrest was illegal because "the police had detained him without a warrant or probable cause to believe he had committed a felony." He further argues that "The fact that the search may have taken place after the complainant identified appellant does not alter the taint of illegal conduct because the identification itself was also a fruit of the illegal arrest." The State counters such argument saying that the appellant went with the officers voluntarily; that he was arrested only after being identified by the prosecutrix; and that the search followed the arrest. All of this was undisputed evidence.

At the conclusion of the hearing, held outside the presence of the jury, and even though the trial court's ruling was not in response to a specific objection by appellant, the court allowed the evidence concerning the search of the defendant to be admitted into evidence. Implied in that ruling was necessarily a finding that appellant had accompanied officers voluntarily and that the search following his identification by the victim was therefore not the fruit of an unlawful arrest. We find ample evidence in the record to support that finding. Accordingly, ground of error four is overruled.

■ During the course of the trial, the victim positively identified the defendant as

the man who raped her. Her friend, Roy Hankins, also identified the defendant as the man who shot him and grabbed his girlfriend. Appellant argues next that the trial court committed cumulative error by allowing the State, through its witnesses, to improperly bolster complainant's unimpeached identification of the accused. Appellant complains of the corroborative testimony of three witnesses.

Mrs. Moray, when asked to describe her perception of what took place when the victim identified the defendant, responded as follows: "As far as going outside, she walked across the street. She put her hands up to her face. You don't want me to say anything she said? She put her hands up to her face and started crying." Officer Jones was permitted, over defense counsel's objection, to testify similarly as to this same event. Officer Turner also testified to the complainant's participation in the identification of the accused. He described her reaction by stating that "She became upset and started—I believe she started kind of crying, became scared and said, that's him." Defense counsel's objection to Officer Turner's testimony was sustained and the court instructed the jury to disregard it.

Appellant relies upon *Lyons v. State,* 388 S.W.2d 950 (Tex.Cr.App.1965), for the proposition that, while a witness who has identified her assailant in court may testify to a prior identification properly conducted, others may not bolster her unimpeached testimony by corroborating the fact that she did make an earlier identification. In *Lyons,* the court held it was error to permit, over appellant's objection, two police officers to testify that the complainant identified the appellant at a live line-up and also picked his picture from a photographic line-up. Appellant also cites *Ramos v. State,* 141 Tex.Cr.R. 126, 147 S.W.2d 809 (1941) and *Reddick v. State,* 35 Tex.Cr.R. 463, 34 S.W. 274 (1896). In *Ramos,* a police officer was asked by the State: "When you brought this defendant to her, what, if anything, did she say?" The officer replied, "When we brought him into the room this woman looked at him and said, 'That is him', and

became hysterical, and she said, 'Please take him out of here'." In *Reddick,* the State was allowed to prove by the testimony of a sheriff that the complainant had identified the appellant as her assailant, and that upon seeing the appellant, the complainant fainted and had to be caught and held up by others.

These cases are clearly distinguishable from the case at bar. In each of the above cases, the testimony objected to included the fact of pretrial identification by the witnesses. In our case, Officer Jones merely testified as to what took place. Mrs. Moray testified only to her perception of complainant's conduct. Neither witness testified as to what the complainant had said when the identification took place.

■ It was only Officer Turner who offered testimony to the fact that the complainant actually identified the appellant. Appellant's objection to that portion of his testimony was immediately sustained by the trial court. The court promptly issued an instruction to the jury to disregard Officer Turner's testimony, the hearsay identification of the appellant. Such an instruction to disregard the testimony will cure any error unless the testimony was clearly calculated to inflame the minds of the jury. *Warren v. State,* 514 S.W.2d 458 (Tex.Cr.App.1974); *Allen v. State,* 513 S.W.2d 556 (Tex.Cr.App.1974; *Fugitt v. State,* 623 S.W.2d 471 (Tex.App.—Corpus Christi 1981). In light of the strength of the complainant's identification of appellant, both pretrial and in court, and the other evidence supporting the complainant's identification, we cannot say that Officer Turner's testimony was harmful to the appellant. Appellant's third ground of error is overruled.

■ In his first ground of error, appellant complains of a remark by the prosecutor during argument at the punishment phase of the trial. However, no objection to the argument was ever raised before the trial court. Therefore, there is nothing presented for our review. *Chappell v. State,* 519 S.W.2d 453 (Tex.Cr.App.1975). Ground of error one is overruled.

Finally, appellant argues that his Sixth Amendment right to counsel was violated when the trial court failed to conduct an inquiry into appellant's "Peremtory [sic] Demand of Defendant for Dismissal of Attorney." Appellant's trial transpired on June 11 and 12, 1979. Although appellant contends that the motion was filed on June 11, 1979, the District Clerk's file mark reflects the date as being June 25, 1979. The appellant has made no objection at the time it was made or thereafter. He is therefore bound by it. *Stockton v. State*, 487 S.W.2d 69 (Tex.Cr.App.1972). Appellant's self-serving statements are insufficient to impeach the record. See *Brooks v. State*, 473 S.W.2d 30 (Tex.Cr.App.1971) and cases cited therein. In addition, the record before us reflects that appellant's motion was presented after the trial, and that appellant's trial counsel was dismissed thereafter.

We have considered all of appellant's grounds of error, and they are all overruled. The judgment of the trial court is affirmed.