KLEIN v. STATE

(comment: 1)(comment: 2)

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-390-CR

NICHOLAS GEORGE KLEIN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 362ND
 DISTRICT COURT OF DENTON COUNTY

------------

OPINION
 
ON STATE’S

PETITION FOR DISCRETIONARY REVIEW 

------------

After reviewing the State’s petition for discretionary review, we modify our opinion and judgment in this appeal.  
See
 
Tex. R. App. P. 
50.  We withdraw our February 2, 2006 opinion and judgment and substitute the following.
  

This case involves allegations by a child of sexual assault by a parent, which allegations were recanted over a period of time before, and during, the trial of the parent. 

Under a single indictment, a jury convicted Appellant Nicholas George Klein of eight counts of aggravated sexual assault of a child, his daughter.
(footnote: 1)  The jury assessed a punishment of ten years’ confinement in the Institutional Division of the Texas Department of Criminal Justice on Count I of the indictment and assessed a ten-year probated sentence on each of the remaining seven counts.  The trial court sentenced Klein accordingly in two judgments, one for Count I and one for the remaining Counts II through VIII.  Klein brings six points on appeal, challenging the legal and factual sufficiency of the evidence, as well as certain evidentiary rulings of the trial court, and the stacking of the currently-running probated sentences onto the sentence of confinement on the first count.  Because we hold that the evidence is legally insufficient to support the verdicts on Counts I, II, III, IV, V, and VI, we reverse the judgments as to those counts and enter an acquittal on each count.  Regarding Counts VII and VIII, we hold that the trial court reversibly erred in admitting the testimony of Dawn Todd and Officer Cory Cook.  We therefore reverse the judgment as to Counts VII and VIII and remand those two counts to the trial court for a new trial consistent with this opinion. 

I.  
Sufficiency of the Evidence

A.  
Legal Sufficiency

In his first point, Klein complains that the evidence is legally insufficient to support the verdicts.  In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.
  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).
  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).
 We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).
  The standard of review is the same for direct and circumstantial evidence cases.  
Burden v. State
, 55 S.W.3d 608, 613 (Tex. Crim. App. 2001); 
Kutzner v. State
, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

In his brief, Klein contends that the only probative evidence came from the outcry witness because the other evidence of his guilt—the testimony of CPS investigator Dawn Todd, Carrollton police officer Cory Cook, and S.A., Miriam’s classmate—was inadmissible hearsay admitted with no immediate limiting instruction, even though defense counsel both objected and requested a limiting instruction.  The Texas Court of Criminal Appeals has recently addressed the interplay between the issues of admissibility and sufficiency:

Sometimes a claim of trial court evidentiary error and a claim of insufficient evidence overlap so much that it is hard to separate them.  For example, suppose that the identity of a bank robber is proven through the testimony of one and only one witness at trial.  Suppose further that this witness' testimony is rank hearsay:  ‘Little Nell told me that Simon was the bank robber.’   On appeal a defendant might raise a hearsay claim and a claim of sufficiency of the evidence to prove identity.  He will have the right to have the hearsay question considered on its merits only if he objected properly at trial;  he will have the right to have the question of the sufficiency of evidence to prove identity considered on its merits whether or not he objected.

But an appellate court must consider all evidence actually admitted at trial in its sufficiency review and give it whatever weight and probative value it could rationally convey to a jury.  Thus, even if the trial court erred in admitting the witness' testimony of Little Nell's out-of-court statement, the reviewing court must consider that improperly-admitted hearsay in assessing the sufficiency of the evidence to prove the bank robber's identity.  As Professors Dix and Dawson explain:  ‘[a]n appellant ... is not entitled to have an appellate court first consider the appellant's complaints concerning improper admitted evidence and, if it resolves any of those in favor of the appellant, to then, second, consider the sufficiency of the properly-admitted evidence to support the conviction.’  There is much logic in that rule:

This rule rests in large part upon what is perceived as the unfairness of barring further prosecution where the State has not had a fair opportunity to prove guilt.  A trial judge's commission of trial error may lull the State into a false sense of security that may cause it to limit its presentation of evidence.  Erroneous admission of hearsay evidence, for example, may cause the State to forego offering other evidence that would ultimately prove admissible.  

In our example, had the judge excluded the hearsay identification evidence, the State might have put on other evidence to prove identity.  The remedy lies in a new trial, not an acquittal for insufficient evidence, because ‘[t]he risk of frustrating the State's legitimate interest in a full opportunity to prove guilt, in any case, outweighs the defendant's interest in being subjected to trial only once.’  

Both litigants and reviewing courts should be careful to distinguish claims of improperly admitted evidence (trial error) from legal insufficiency of all admitted evidence—even improperly admitted evidence.  This Court has not always been sufficiently careful in that regard and therein lies the problem in this case.

Moff v. State
, 
131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004).
  Consequently, in addressing the legal sufficiency of the evidence, we must temporarily put aside Klein’s complaints of trial error and consider all admitted evidence in the light most favorable to the verdicts.

Klein was indicted on four counts of aggravated sexual assault by penetrating Miriam’s sexual organ with his finger and four counts of aggravated sexual assault by causing Miriam’s sexual organ to contact or penetrate his mouth.  
See
 
Tex. Penal Code Ann.
 § 22.011(a)(2)(A), (C) (Vernon Supp. 2005).
  We join other courts of appeal in holding that the tongue is part of the mouth for purposes of this statute.  
See Jiminez v. State
,
 953 S.W.2d 293, 297 (Tex. App.—Austin 1997, pet. ref’d); 
Johnson v. State
, 882 S.W.2d 39, 41-42 (Tex. App.—Houston [1st
 Dist.] 1994, pet. ref’d); 
Montoya v. State
, 841 S.W.2d 419, 422 (Tex. App.—Dallas 1992) (op. on reh’g), 
vacated on other grounds
, 906 S.W.2d 528 (Tex. Crim. App. 1995).
  All of the offenses were alleged to have occurred in Denton County.  The four digital penetration offenses charged in Counts I, III, V, and VII were alleged to have occurred on or about June 1, 2000, December 1, 2000, May 1, 2001, and November 1, 2001 respectively.  Similarly, the remaining four oral-genital contact/penetration offenses charged in Counts II, IV, VI, and VIII were alleged to have occurred on or about June 1, 2000, December 1, 2000, May 1, 2001, and November 1, 2001.

Miriam, who was eleven years old at the time of trial, testified in part as follows:

Q.  Tell us about a time that you remember.

. . . . 

A.  I was in my bed, and he came in.

Q.  What happened when he came in?

A.  He did what I told the counselor.

Q.  You told her that he touched you with his fingers on your vagina and put his tongue on your vagina.

A.  Yes.

Q.  Is that what happened?

. . . .

A.  Yes.

Q.  Did that happen one time or more than one time?

A.  More than one time.

Q.  Did it happen -- you said that you lived in Carrollton.  Did it happen any other places besides your house in Carrollton?

A.  No.

Q.  How old were you when you first moved to Carrollton?

A.  Eight or nine, I think.

Q.  Did you -- you said that you went to fourth grade in Carrollton, all of fourth grade, right?

A.  Yes.

. . . . 

Q.  The time that you’ve told us about and the other times that happened, you said those were all at your house in Carrollton.  Is that right?

A.  Yes.

Q.  Did that happen at night or during the day?

A.  Night.

Valerie Batchelder, an elementary school counselor at McCoy Elementary School in Carrollton, Texas, testified that on January 11, 2002, Miriam asked to speak with her.  She testified that Miriam told her, “[t]hings aren’t so good at home.”  Batchelder said that Miriam told her that her mom and dad fought sometimes and that sometimes her dad hit her too hard.  Batchelder testified that Miriam said, “[s]ometimes my dad messes with me.”  When Batchelder asked what “messes with me” meant, Miriam said that he tickled her and sometimes touched her between her legs with his fingers, and sometimes he used his tongue.  Batchelder claimed that Miriam said she tried to wear zip-up pajamas. The prosecutor asked if “between her legs” would be her female sexual organ and Batchelder replied, “[y]es.”  Batchelder admitted that although she assumed that Miriam was referring to her sexual organ, Miriam never specifically said so. 

When Batchelder asked the child how often her father messed with her, the child said it happened most nights.  Batchelder said that Miriam stated that she had not told her mother.  Although Miriam did not indicate a time period for the events that she described to Batchelder, she did mention that they occurred while her mother was at a dance class. 

Dawn Todd, a CPS investigator, testified that Miriam “indicated that [Klein] had touched her on her vagina with his fingers and with his tongue.”  Miriam told her that it happened on Monday nights when her mother was at dance class.  The following exchange took place regarding the location on Miriam’s body of the alleged touching:

Q. When she talked about being touched between her legs, did you ever ask her to clarify and say what she meant by that?

A. I did.  She indicated her vagina.  And then at one point she was talking about something, and she said -- she referred to a body part as her butt.  And I asked her to explain to me what her butt was, and she pointed to her genital area.  And I said, okay, what is the -- we talked about where pee comes out or where poop comes out.  And where pee comes out she calls butt, and where poop comes out she called her rear.

Q. And the part where she said her dad touched her, what did she call that?

A. The butt.

Q. Did she ever call it anything else?

A. She called it vagina also.

. . . . 

Q. Did you ever talk to her about where specifically he had put his finger?  Did you talk about, like, inside versus outside?

A. We did.  I asked her, and she said it was between the -- I don’t know if she said flap parts.  I don’t know if she was saying flap or flat parts, but she indicated it was on her vaginal area.  We talked about inside-outside, and she, if I remember correctly, said it was inside but not all the way in or made some reference to that.

Q. So in between the flat or flap parts?

A. Right.

Officer Cook, the investigating officer, testified that the home where the alleged conduct took place was in Denton County.
(footnote: 2)  He also testified that Miriam told him that she had last been assaulted in November 2001.  Based on the appropriate standard of review, we hold that the evidence is legally sufficient to support Klein’s conviction for Counts VII and VIII, that is, one count of aggravated sexual assault on or about November 1, 2001 in Denton County, Texas by penetrating Miriam’s sexual organ with his finger and another count of aggravated sexual assault on or about November 1, 2001 in Denton County, Texas by causing Miriam’s sexual organ to contact or penetrate his mouth.  We overrule Klein’s first point in part.

Regarding the remaining six counts, however, we hold that the evidence is legally insufficient to support Klein’s convictions because the record is void of any specific evidence of separate incidents constituting commission of additional offenses.  Various acts of sexual abuse committed over a period of time do not comprise a single offense under Texas law.  
Vernon v. State
, 841 S.W.2d 407, 410 (Tex. Crim. App. 1992).  Persons who commit multiple assaults against the same victim are liable for separate prosecution and punishment for each instance of abuse.  
Id.
  The State must allege and prove a specific, single transaction
.  O’Neal v. State
, 746 S.W.2d 769, 771 (Tex. Crim. App. 1998).  However, the State is not bound to prove a specific date
.  Scroggan v. State
, 799 S.W.2d 679, 680 (Tex. Crim. App. 1990); 
Wilson v. State
, 730 S.W.2d 438, 443 (Tex. App.—Fort Worth 1987, pet. ref’d).  
In this case, as to the first six counts, the State did not meet its burden.

Other than the testimony of Officer Cook that Miriam had told him that she had been last assaulted in November of 2001, there was no testimony proving 
a specific occurrence of an incident provided by any witness.  The testimony indicated (1) the alleged abuse occurred from the fall of 2001 through January of 2002, and perhaps even before that when the family resided in Louisiana, (2) that Miriam reported the alleged sexual abuse occurred more than once, (3) that the sexual abuse had been going on for a long time, (4) that the sexual abuse happened “most nights” while her mother was in dance class, (5) that her mother attended dance class for six to eight weeks when Miriam was a student at McCoy Elementary, and (6) that Miriam transferred to McCoy Elementary in April or May of 2001.  However, these general assertions fail to describe separate and distinct incidents legally sufficient to enable the jury to properly find more than one distinct offense of each type.  
See Vernon
, 841 S.W.2d at 410 (holding defendant's various acts of sexual misconduct committed against stepdaughter over period of six years did not in fact comprise single offense under laws of Texas).

Thus, applying the appropriate standard of review, we hold that the evidence is legally insufficient to support Klein’s convictions on Counts I, II, III, IV, V and VI.  We sustain Klein’s first point in part.  We therefore reverse the judgments and render an acquittal on these counts.  Because we have acquitted Klein on the only count for which he was confined, we do not reach his sixth point concerning the issue of stacking.  
See
 
Tex. R. App. P.
 47.1.
  Having sustained Klein’s first point in part and overruled it in part, we will address Klein’s remaining points with regard to only the live counts, Counts VII and VIII.
  
See
 
id.

B.  
Factual Sufficiency of the Evidence

In his second point, Klein complains that the evidence is factually insufficient to support the verdicts. Again, Klein seeks to exclude from our review evidence that he alleges is inadmissible.  In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).
 Relying on the Texas Court of Criminal Appeals rationale in 
Moff
, quoted above,
(footnote: 3) as well as the holdings of our sister courts in Houston and Amarillo,
(footnote: 4) we hold that “all the evidence” means all admitted evidence, even evidence improperly admitted. 

The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Zuniga
, 144 S.W.3d at 484.
  There are two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.
  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.
  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).
  We may not substitute our judgment for the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.
  A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.
  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the Klein’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Klein focuses on Miriam’s testimony.  In relevant part, she testified as follows while being questioned by the prosecutor:

Q.  We talked about what you told Mrs. Batchelder, that your dad had touched you on your vagina  with his fingers and his tongue.  When did that first start happening?

[Defense Counsel]: I’m going to renew my objection, your Honor.  She has not testified that it started happening.  All this child’s testified to is what she told someone.  There is no evidence that it happened. 

The defense objection was overruled.  The testimony then continued,

A.  I don’t remember.

Q.  Do you have a pretty good memory?

A.  Yes.

Q.  And how old can you -- how old were you that you have memory of?  How far back can you remember?

A.  I can remember certain things but -- like really far back, but only certain things I can remember.

Q.  So you don’t remember exactly when it first started?

A.  No.

Q.  What’s the first time that you remember?

A.  I don’t really know. 

. . . . 

Q.  Are there any times that you remember enough to where you can describe them in court?

A.  Yes.

Q.  Tell us about a time that you remember.

[Defense Counsel]:  Your Honor, I’m going to object.  She hasn’t asked her what it is that she does remember. 

THE COURT:  Overruled.

Q.  . . . That means you can answer.

A.  I was in my bed, and he came in.

Q.  What happened when he came in?

A.  He did what I told the counselor.

Q.  You told her that he touched you with his fingers on your vagina and put his tongue on your vagina .

A.  Yes.

Q.  Is that what happened?  

A.  You mean then or at all?

Q.  Is that what happened the time that you’re telling us about?

A.  Yes.

Q.  Did that happen one time or more than one time?

A.  More than one time.

Q.  Did it happen -- you said that you lived in Carrollton.  Did it happen any other places besides your house in Carrollton?

A.  No.

Q.  How old were you when you first moved to Carrollton?

A.  Eight or nine, I think.

Q.  Did you -- you said that you went to fourth grade in Carrollton, all of fourth grade, right?

A.  Yes.

 . . . . 

Q.  The time that you’ve told us about and the other times that happened, you said that those were all at your house in Carrollton.  Is that right?

A.  Yes.

Q.  Did that happen at night or during the day?

A.  At night.

Q.  Where was your mom when this was happening?

A.  I don’t remember. 

. . . . 

Q.  Did you ever tell anyone that what you told Mrs. Batchelder wasn’t true?

A.  Yes.

Q.  And who was the first person that you told that to?

A.  My mom.

Q.  How come you told your mom that?

A.  Because she--because it didn’t and she is a person I can trust. 

Q.  Because it didn’t and she’s a person that you can trust?

A.  Yes.

Q.  Explain that to us.

A.  Like, I felt that I could tell her because I made a mistake, and it’s hard to tell somebody when you make a mistake.

Q.  What did you make a mistake about?

A.  About saying something that didn’t -- that wasn’t true.

Q.  I’m confused.  What did you say that wasn’t true?

A.  I said that my dad touched me, and it wasn’t true.

Q.  But you just told us that it happened.

A.  I thought you were referring to what I said, so . . . .

Q.  So you told your mom that it didn’t happen.

A.  Yes.  

. . . .

Q.  . . . Now, you told Mrs. Bachelder and you told Dawn Todd with CPS and you told the police that your dad came into your room at night and that he touched you on your vagina  with his fingers and that he licked you on your vagina   with his tongue.  Is that something that happened or something that didn’t happen?

A.  Didn’t happen.

Q.  So what you were talking about earlier when I asked you to tell me about a time that you remember and you told us about the time that he came in your room at night and you were wearing zip-up pajamas, that was something that you remembered, was that true? 

A.  No.

Q.  You understand that you’re under oath to tell the truth?

A.  Yes.  I thought that you were asking, like, if -- what I told somebody else.

Q.  So when the question was tell me about a time you remember, you misunderstood that?

A.  Yes.

Q.  Do you remember what you told Dawn Todd when you went to talk to her?  

A.  No.

Q.  Did you tell her that your dad had done these things or that he had not done these things?

A.  Had.

Q.  Why did you tell Dawn Todd that?

A.  Because I was afraid that if I -- because I was afraid.

Q.  What where you afraid of?

A.  I was afraid if I changed my story, I’d get in trouble for lying.

Q.  Is lying something that you get in trouble for?

A.  Sometimes. 

Miriam also testified that she had been seeing therapists since she was in kindergarten for problems with stealing and lying. 

Klein argues that Miriam consistently recanted before trial and also recanted without equivocation at trial when she understood the question.  He also argues that the entire tenor of her testimony was that he did not do anything to her and that the entire tenor of her testimony completely refuted the allegations that Miriam made to Dawn Todd, Officer Cook, and S.A.  

But it is not Klein’s, the State’s, or even this court’s place to interpret the evidence; it is the jury’s.  
Zuniga
, 144 S.W.3d at 481; 
Cain
, 958 S.W.2d at 407.
  Furthermore, the jury is under no requirement to evaluate a witness’s testimony as a unified whole; the jury may choose to believe all, part, or none of a particular witness’s testimony.  
Losada v. State
, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).  
It is the jury, who has the opportunity to observe the demeanor of all the participants at trial, who must exclusively judge the credibility of the testimony.  
Zuniga
, 144 S.W.3d at 481; 
Cain
, 958 S.W.2d at 407.
  Based on our review of all the evidence, we cannot say that the evidence supporting the verdicts on Counts VII and VIII, considered alone, is too weak to support the finding of guilt beyond a reasonable doubt, nor can we say that the evidence contradicting the verdict of guilt on these two counts is so strong that guilt cannot be proven beyond a reasonable doubt.  
Zuniga
, 144 S.W.3d at 484-85.
  We therefore overrule Klein’s second point as to Counts VII and VIII.

II.  
Trial Error

A.  
Batchelder’s Testimony

In his third point, Klein complains that the trial court erred by admitting the testimony of Valerie Batchelder, the alleged outcry witness, because the State provided insufficient notice of the evidence.  Specifically, Klein complains that the written summary of the outcry statement fails to (1) describe any act for which he was indicted and (2) adequately place him on notice of the content and scope of the outcry testimony as required by the statute.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 38.072 (Vernon 2005).
  The State argues, in part, that Klein’s complaint that the outcry testimony fails to describe an act for which Klein was indicted was not preserved because Klein failed to specifically object on this basis after the hearing.  We disagree.

At the conclusion of the admissibility hearing, Klein’s trial counsel objected “that the summary that was provided to [her] was insufficient and there is -- this witness has indicated she’s going to testify to substantially more than the summary that was provided.”  Klein’s trial counsel also lodged “[j]ust another objection on the insufficiency of the evidence -- of the outcry notice.”  We see no meaningful distinction between the objection “insufficiency of the evidence” and “failure to describe” an indicted offense.  Klein’s trial counsel’s objections sufficiently put the trial judge on notice of the nature of Klein’s complaints.  

To the extent that the State argues that Klein failed to preserve his complaint about the notice’s failure to describe an indicted offense because the objection was not made before the jury, we note that, if a trial court hears objections to proffered evidence outside the jury’s presence and rules that the evidence is admissible, the objections are deemed to apply to the evidence when it is admitted before the jury without the necessity of repeating the objections.  
Tex. R. Evid.
 103(a)(1); 
Geuder v. State
, 115 S.W.3d 11, 13-14 (Tex. Crim. App. 2003); 
Ethington v. State
, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)
.
  Consequently, we hold that Klein preserved his complaint that the outcry statement was insufficient because it failed to describe an act for which he was indicted.

Article 38.072 creates a statutory exception to the general rule excluding hearsay evidence for a child abuse victim’s initial outcry statement made to the first person 18 years of age or older, other than the defendant, to whom the child made a statement about the offense.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 38.072.  Before the outcry statement is admissible, however, several requirements must be satisfied.  
First, the party intending to offer the statement must notify the adverse party, on or before the 14th
 day before the proceedings begin, (1) of its intention to do so, (2) with the name of the witness through whom it intends to offer the statement, and (3) with a written summary of the statement.  
Id
. § 2(b)(1)(A), (B), (C).  Second, the trial court must determine, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement.  
Id
. § 2(b)(2).  Finally, the 
child must testify or be available to testify at the proceeding in court or in any other manner provided by law.  
Id
. § 2(b)(3).  

We review the trial court's decision to admit or exclude a hearsay statement 
that may fall within the article 38.072 hearsay or outcry exception 
under an abuse of discretion standard. 
 
See Garcia v. State
, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); 
Smith v. State
, 131 S.W.3d 928, 931 (Tex. App.—Eastland 2004, pet. ref’d).  As stated by the court of criminal appeals in 
Garcia
, “a trial court has broad discretion in determining the admissibility of such evidence.  The exercise of that discretion will not be disturbed unless a clear abuse of discretion is established by the record.”  
792 S.W.2d at 92.

F
or an outcry statement to be admissible under article 38.072, the outcry statement must describe the offense in some discernible manner and must be more than words which generally allude that something in the area of sexual abuse is occurring.  
See id
.
 
at 91.
 

In 
Garcia
, the appellant argued that the trial court erred because the complainant’s first grade teacher should have been designated the outcry witness, not the witness so designated, because she was the first person, eighteen years old or older to whom the complainant made a “statement about the offense.”  
See id
. at 89-90.  In evaluating Garcia’s complaint, the court of criminal appeals 
interpreted the phrase, “statement about the offense,” found in section 2(a)(2) of the statute, to mean 
“a statement that in some discernible manner describes the alleged offense,” indicating that article 38.072 demands “more than a general allusion of sexual abuse” 
before a person may be properly designated an outcry witness. 
 See
 
id
. at 91. 
 In rejecting appellant’s argument that the teacher was the outcry witness, the court stated that the record merely reflected that the complainant had “told her teacher that something had happened at home, and that it had to do with child abuse,” and that, as to a description of the alleged offense, the record was “void as to any specific details of the statements” made to the teacher.  
See id
.

In the case before us, the written outcry summary provided by the State to Klein was handwritten by the outcry witness and stated:

[Miriam], 5th
 grader at McCoy, asked to speak with me.  Said her parents fight at night and she feels scared.  Father is also mean to [her] -- ‘hits me with his hand too hard’ -- ‘it hurts bad.’  ‘He also messes with me.’ When I asked what ‘messes’ means she said ‘he comes in my bedroom at night and tickles me.’  ‘I don’t like it.’  ‘He touches me between my legs.  Sometimes he uses his tongue and I don’t like it.’  Said her mother doesn’t know -- never told anyone.  Says mom is always nice to her.  Use [sic] to lock her door, but dad changed the locks.  Tries to wear zip up pajamas.  Has 3 siblings 4 yrs. old & younger (2 sisters & 1 brother).

Further, Batchelder testified at the admissibility hearing that Miriam told her, 

“things aren’t so good at home”; 

that her parents fought sometimes and that sometimes her father hits her too hard; 

that there used to be a lock on her bedroom door but that her dad had removed it or it would not lock anymore; 

“sometimes he messes with me”; 

that her dad tickled her and sometimes touched her between her legs with his fingers, and sometimes he used his tongue; 

that her father “mess[ed] with her” most nights; 

that the events occurred while her mother was at a dance class; 

that she had not told her mother; and 

that she tried to wear zip-up pajamas; 

These statements are more than general allusions that something in the area of sexual abuse is occurring. 
 
Unlike in 
Garcia
, where there was only a general reference to an unidentified something wrong going on at home, here Miriam’s statements to Batchelder were sufficient to identify in a discernable manner the type of sexual abuse, when the abuse usually occurred, and what actions Miriam had taken to prevent the future abuse. 
 
See
 
Garcia
, 792 S.W.2d at 91.  Thus, we hold that the trial court did not abuse its discretion 
by allowing Batchelder to testify as the outcry witness
 because the State provided sufficient notice of the evidence to Klein.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 38.072; 
Garcia
, 792 S.W.2d at 91. 
 

We now turn to Klein’s complaint that the trial court erred when it admitted Batchelder’s testimony because her testimony at trial included facts not mentioned in the written summary.  Specifically, Klein complains about the trial court’s admittance of testimony from Batchelder that Miriam, (1) always begged her mother to allow her to stay and watch her mother’s dance lessons because when she did not her dad picked her up, took her home, and “messes with me,” (2) begged Batchelder to call her mother and tell her, and (3) told Batchelder that “now you know why I love school so much.”  The State responds that it was not error for the trial court to admit Batchelder’s testimony regarding the first two statements because the facts contained in the statements were either included in the outcry summary or merely described circumstances leading up to the outcry.  As to Batchelder’s testimony regarding the third statement, the State argues that Klein failed to preserve his complaint for our review because (1) Batchelder did not testify regarding this statement at the admissibility hearing, and (2) Klein failed to lodge any objection when Batchelder testified to the statement at trial.  Because the record reflects that Batchelder testified at the admissibility hearing that Miriam told her, “now you know why I 
like
 school so much,” and because Klein, at the conclusion of the hearing, objected to the outcry summary as being insufficient, we hold that Klein preserved his complaint as to Batchelder’s testimony regarding the third statement for our review. 

The purpose of the notice requirement contained in Article 38.072 is to prevent the defendant from being surprised by the introduction of the outcry hearsay testimony.  
Gay v. State
, 981 S.W.2d 864, 866 (Tex. App.—Houston [1st
 Dist.] 1998, pet. ref’d).  To achieve this purpose, the written summary must give the defendant adequate notice of the content and scope of the outcry testimony.  
Id
;  
Davidson v. State
, 80 S.W.3d 132, 136 (Tex. App.—Texarkana 2002, pet. ref’d).
  It is sufficient if it reasonably informs the defendant of the essential facts related in the outcry statement. 
 
Davidson
, 80 S.W.3d at 136. After reviewing the record, we believe that the outcry summary provided in this case contained the essential facts necessary to provide Klein with notice of the content and scope of the outcry testimony, i.e., we believe that the portion of the complained-of testimony not specifically included in the outcry summary relates to non-essential facts.  
See Davidson
, 80 S.W.3d at 135-37.
 Further, we cannot say that the trial court erred in admitting the complained-of testimony because (1) the written outcry summary provided to Klein by the State did include that Miriam told Batchelder that her father “messes with me,” and (2) we believe that the trial court could have determined that the remaining portion of the complained-of testimony merely describes the circumstances peripheral to the alleged abuse and leading up to the outcry statement. 
 See Gottlich v. State
, 822 S.W.2d 734, 737 (Tex. App.—Fort Worth 1992, pet. ref’d) (
holding that it was not error for the trial court to admit a hearsay statement not specifically included in the outcry summary where the statement described the circumstances leading up to the outcry statement and its details), 
disapproved on other grounds
, 
Curry v. State
, 861 S.W.2d 479, 482 n.2 (Tex. App.—Fort Worth 1993, pet. ref’d).
  Accordingly, we hold that the trial court did not abuse its discretion when it admitted Batchelder’s outcry testimony.  We overrule Klein’s third point. 

B.   Testimony of Todd, Cook, and S.A. 
 

In his fourth point, Klein argues that the trial court erred in admitting the testimony of Dawn Todd, Cory Cook, and S.A. regarding Miriam’s prior statements because it was inadmissible impeachment evidence of Miriam.  He further argues that the trial court erred by not giving a limiting instruction at the time the evidence was admitted.  Initially, we note that Miriam’s testimony at trial was internally conflicting.  She testified that her father had sexually assaulted her, but then testified she had only been repeating what she had falsely told others and that he had not sexually assaulted her.  Thus, the testimony of Dawn Todd impeached Miriam’s testimony recanting her outcry but supported her testimony affirming the assaults.  The testimony of Officer Cook regarding the statements Miriam made confirming Klein’s guilt was consistent with Miriam’s testimony affirming the assaults but impeached her testimony recanting her outcry.  Finally, Cook’s testimony confirming that Miriam had recanted before trial was consistent with Miriam’s testimony recanting her outcry and her testimony that she had recanted before trial, but it impeached her testimony that the offenses had actually occurred. 

At the time the State offered the testimony of Todd, Cook, and S.A., Miriam had already testified.  The trial court therefore already knew that Miriam’s testimony was self-conflicting.  Because of that
 foreknowledge, the trial court also already knew that each impeachment witness would both corroborate and impeach Miriam’s testimony in some way.  Nonetheless, the trial court refused to give an immediate limiting instruction, and, in the limiting instruction present in the final jury charge,
(footnote: 5) 
failed to clearly inform the jury that the evidence had been 
admitted by the court
 
for the purpose of impeachment, implying in the 
charge that the jury determines the purpose for which the evidence is admitted.
(footnote: 6)
 To the extent that the impeachment witnesses corroborated Miriam’s testimony, the State argues that the witnesses testified about admissible prior consistent statements, and Klein argues that they testified about inadmissible prior consistent statements. To the extent that the impeachment witnesses impeached Miriam, Klein argues that the impeachment was impermissible because the only way the evidence reached the jury was due to the fact that the State called Miriam to the stand before calling the other witnesses, knowing that she had recanted before trial and would likely recant while testifying.  We agree. 

Rule 607 allows a party to attack the credibility of its own witness.  
Tex. R. Evid.
 607.
  But the Texas Court of Criminal Appeals limits such attacks:

[T]he State's knowledge that its own witness will testify unfavorably is a factor the trial court must consider when determining whether the evidence is admissible under Rule 403.... [A] trial court abuses its discretion under Rule 403 when it allows the State to admit impeachment evidence for the primary purpose of placing evidence before the jury that was otherwise inadmissible.  [Such] impeachment evidence must be excluded under Rule 403's balancing test because the State profits from the witness' testimony only if the jury misuses the evidence by considering it for its truth.  Consequently, any probative value the impeachment testimony may have is substantially outweighed by its prejudicial effect.

Hughes v. State
, 4 S.W.3d 1, 5 (Tex. Crim. App. 1999).

It is clear from the record that the State had ample notice that Miriam had recanted before trial and that she would recant on the stand.  Before trial, Miriam sent two letters to the prosecutor telling her that the events she described to Valerie Batchelder did not occur.  At a bond hearing on August 8, 2002, more than a year before trial, the prosecutor cross-examined Jean Valentine, one of Miriam’s prior therapists, regarding Miriam’s first recantation of the sexual abuse allegations in a session.  The prosecutor also was aware that Officer Cook, the police officer who investigated the case and who spoke with Miriam at least twice at her school, said Miriam had recanted to him on January 30, 2002, less than a month after her initial outcry.  Finally, the prosecutor was also aware that since January 30, 2002, Miriam had consistently denied the sexual abuse allegations.  Moreover, it is apparent from a review of Miriam’s entire testimony that she was recanting her allegations of abuse.  In that regard, we note that Miriam began her testimony by recanting and ended with recanting.  Only the answers to a few questions from the prosecutor, which questions Miriam later indicated she misunderstood, confirm her initial outcry against Klein. 

It is also clear from the record that the testimony of Dawn Todd was essential to the State’s case in chief.  Todd’s testimony allowed the State to prove penetration, an essential element of Count VII of the indictment. Similarly, Cook’s testimony was important because it was the only testimony identifying a specific date for an occurrence of the alleged offenses.  
Because the value of the testimony of Todd and Cook came only from its misuse by the jury, any legitimate probative value it had was substantially outweighed by its prejudicial effect.  
Id
.  Consequently, the trial court erred to the extent that it admitted the testimony of Cook and Todd as impeachment evidence. 

The non-specific testimony of S.A., however, that Miriam had told her that her dad “did things to her at night,” does not tend to prove any of the essential elements of the State’s case.  It does, however, tend to challenge Miriam’s credibility by conflicting with Miriam’s testimony that she had told S.A. that she was “having a bit of problems at home,” because it, unlike Miriam’s testimony as to what she told S.A., implies abuse.  We cannot therefore conclude that the State’s primary purpose in having S.A. testify was to get her evidence before the jury.  We hold that the trial court did not err in admitting the testimony of S.A.  We do not need to reach Klein’s subissue regarding the timeliness of the limiting instruction.  
See
 
Tex. R. App. P.
 47.1.
  We sustain Klein’s fourth point as to the testimony of Todd and Cook; we overrule it as to the testimony of S.A. 

Even though the testimony of Todd and Cook was admitted in error to the extent that it was admitted as impeachment evidence, we must uphold the trial court's rulings on admissibility if they are reasonably supported by the record and are correct under any theory of law applicable to the case.  
See State v. Ross
, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000).
 

In that regard, Klein’s fifth point addresses another possible theory of admissibility.  In his fifth point, Klein contends that the trial court erred to the extent that it admitted the testimony of Todd, Cook, and S.A. as evidence of prior consistent statements by Miriam.  The State concedes that S.A.’s testimony is not admissible as a prior consistent statement, but we have already held that the trial court did not abuse its discretion by admitting it as impeachment evidence.
(footnote: 7)  Thus, we address the admissibility of Dawn Todd and Officer Cook’s testimony as evidence of prior consistent statements. 

 Rule 801(e)(1)(B) provides that a prior consistent statement by a witness “offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive” is not hearsay.  
Tex. R. Evid.
 801(e)(1)(B).
  The State argues that Miriam herself impliedly charged improper influence when she indicated that she misunderstood the prosecutor after she testified that her father had sexually assaulted her.  Our review of the record shows that it was the prosecutor who introduced the issue of misunderstanding:

Q.  I’m confused.  What did you say that wasn’t true?

A.  I said that my dad touched me, and it wasn’t true.

Q.  But you just told us that it happened.

A.  I thought you were referring to what I said, so . . . .

Q.  So you told your mom that it didn’t happen.

A.  Yes.  

. . . .

Q.  . . . .  Now, you told Mrs. Bachelder and you told Dawn Todd with CPS and you told the police that your dad came into your room at night and that he touched you on your vagina  with his fingers and that he licked you on your vagina  with his tongue.  Is that something that happened or something that didn’t happen?

A.  Didn’t happen.

Q.  So what you were talking about earlier when I asked you to tell me about a time that you remember and you told us about the time that he came in your room at night and you were wearing zip-up pajamas, that was something that you remembered, was that true? 

A.  No.

Q.  You understand that you’re under oath to tell the truth?

A.  Yes.  I thought that you were asking, like, if -- what I told somebody else.

Q.  So when the question was tell me about a time that you remember, you misunderstood that?

A.  Yes.

We see no caselaw, nor does the State direct us to any, that would justify our stretching rule 801(e)(1)(B) to hold that Miriam’s disavowal of her testimony supporting Klein’s guilt, taken alone, operated as an implicit charge that she was “improperly influenced.”  Similarly, nothing in defense counsel’s cross-examination of Miriam implied that Miriam was lying when she testified that Klein had assaulted her or that she had been pressured to so testify. Defense counsel stayed completely away from the testimony that damaged Klein’s case and emphasized Miriam’s testimony that was favorable to Klein—Miriam had lied about the assault and had recanted consistently since soon after the outcry.  All the jury had before it was Miriam’s conflicting testimony.  We hold that conflicting evidence alone does not trigger rule 801(e)(1)(B). 

C.  
Harm Analysis

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment.  
Tex. R. App. P.
 44.2. 
Because the error is not constitutional,
(footnote: 8) we apply rule 44.2(b) and disregard the error if it does not affect Klein’s substantial rights.  
Tex. R. App. P.
 44.2(b); 
see Mosley v. State,
 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999); 
Coggeshall v. State
, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d).
  A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury’s verdict.  
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); 
Coggeshall,
 961 S.W.2d at 643. 
In making this determination, we review the record as a whole.  
See Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). 

As the Texas Court of Criminal Appeals has held, properly admitted evidence of an appellant’s guilt is one factor to consider in performing a harm analysis under rule 44.2(b).  
Motilla v. State
, 78 S.W.3d 352, 358 (Tex. Crim. App. 2002).
  Another is the character of the error and its connection to the other evidence in the case.  
Id. 
at 359.
 

Here, without the testimony of Dawn Todd, the State would not have proven penetration, an essential element of Count VII of the indictment.  Further, 
Officer Cook’s testimony was significant because it was the only evidence identifying a specific date for an occurrence of the alleged offenses. 
 Finally, the testimony of Todd and Cook regarding Miriam’s prior out of court statements was significant in its connection with other evidence, i.e., their testimony served to bolster the testimony of Batchelder while attacking the credibility of Miriam’s recantation.  Based upon our review of all the evidence, as discussed above, we conclude that the trial court’s errors, separately and together, in admitting the evidence of Dawn Todd and Officer Cook concerning Miriam’s statements had a significant or injurious effect on the jury’s verdict such that Klein’s substantial rights were affected.  
See McMurrough v. State
, 995 S.W.2d 944, 948 (Tex. App.—Fort Worth 1999, no pet.).
  Accordingly, the trial court’s error demands that we sustain Klein’s fifth point.

III.  
Conclusion

Because there is legally insufficient evidence of distinct multiple acts of digital penetration and oral-genital contact, and because the evidence of timing of the act of digital penetration and the act of oral-genital contact supports  only Counts VII and VIII, we reverse the judgments as to Counts I, II, III, IV, V, and VI and enter an acquittal on those counts.  Because the improperly admitted testimony of Dawn Todd and Officer Cook about Miriam’s statements before trial affected Klein’s substantial rights by adversely affecting the outcome of his trial, we reverse the judgment as to Counts VII and VIII and remand those two counts for a new trial consistent with this opinion.

BOB MCCOY

JUSTICE

PANEL A:  LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DAUPHINOT, J. filed a concurring and dissenting opinion.

PUBLISH

DELIVERED: April 6, 2006

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-390-CR

NICHOLAS GEORGE KLEIN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 362ND
 DISTRICT COURT OF DENTON COUNTY

------------

CONCURRING AND DISSENTING OPINION

------------

I agree with the majority that the evidence is legally insufficient to support the verdicts on Counts I, II, III, IV, V, and VI and that we should reverse the judgments as to those counts and enter an acquittal on each count.  I also agree, regarding Counts VII and VIII, that the trial court reversibly erred in admitting the testimony of CPS investigator Dawn Todd and Officer Cory Cook and that we should reverse the judgment as to Counts VII and VIII and remand only those two counts to the trial court for a new trial.  I disagree, however, that upon retrial of those counts, the State should be forced to rely on an outcry witness whose testimony, by the majority’s own assessment, is insufficient to show penetration.
(footnote: 1)  Because the  majority’s opinion does not further the policy behind the outcry exception, I must respectfully dissent.

Historically, a rape conviction could not be had on the uncorroborated testimony of the adult female complainant unless the complainant had made an outcry within a prescribed time period after the rape.
(footnote: 2)  As the 
Reddick
 court pointed out in 1896,

Mr. Phillips says: “In prosecutions for rape or for assault with intent to commit rape, proof of the fact that the prosecutrix made complaint soon after the commission of the alleged crime is admissible, and indeed is generally required; but the particulars of the complaint made cannot be admitted in evidence as to the truth of her statement.  The particulars stated, as to the violence used or the person who committed the violence, cannot be received.  The evidence should be confined to the bare proof of the fact that the complaint of personal violence was made, and that an individual was charged, without mentioning his name[.]”
(footnote: 3)  

In 1990, the Texas Court of Criminal Appeals addressed the policy and legislative intent behind article 38.07 of the Code of Criminal Procedure:

In 1975, House Bill 284 created the first version of section 38.07 of the current Code of Criminal Procedure.  The “Bill Analysis” prepared for the House Committee on Criminal Jurisprudence, states that

It is felt that much of the problem associated with the reporting and prosecution of rape is that the present statutes discourage reporting and prosecution because of embarrassment to the victim and the difficulty in obtaining a conviction.

This statement evidences the intent of the Legislature to make rape convictions easier to obtain, not more difficult, a fact this Court recognized in 
Hernandez
.  A hearing on House Bill 284, held at a joint session of the House Committee on Criminal Jurisprudence and the Senate Committee on Jurisprudence (February 18, 1975), also shows the intent of the bill’s drafters to facilitate rape prosecutions.  As originally drafted, the bill called for a sexual offense conviction to be supportable on the uncorroborated testimony of the victim, with no outcry requirement whatsoever.  However, concerns were voiced at the hearing that the then newly proposed restrictions on the admissibility of the victim’s past sexual history together with the new definition of consent (allowing a woman to withdraw her consent at any time before penetration) and the lack of any corroboration or outcry requirement would go too far in eviscerating defendant’s rights.  Presumably in response to these concerns, the bill was amended so as to require corroboration or outcry from victims of sexual offenses without the addition of a proviso exempting minor victims of rape of a child from the new requirements.  Despite this omission, we can find no evidence in the legislative history from 1975 of any intention to alter the longstanding rule that the testimony of a minor victim who cannot consent to sexual acts requires no corroboration or outcry in order to support a conviction.

Indeed, Texas courts construing the pre-1983 version of 38.07 declined to apply the statute to a prosecution in which consent was not an issue.

However, in spite of this long line of precedent, the legislature acted decisively to change the corroboration requirements for minor victims of sexual assault in 1983.  Senate Bill 838 was passed by the sixty-eighth legislature almost simultaneously with this court’s 
Hernandez
 decision, and the two branches of government apparently came to different resolutions of the same problem.  The legislative amendment to 38.07 clearly expresses the legislature’s intent to shield sexual assault victims under 14 from the normal outcry or corroboration requirements, but to require stricter proof when the sexual assault victim is 14 or older.  The language added to Art. 38.07 in 1983 reads:

The requirement that the victim inform another person of an alleged offense does not apply if the victim was younger than 14 years of age at the time of the alleged offense.
(footnote: 4) 

Today, article 38.07 of the Texas Code of Criminal Procedure provides, 

(a) A conviction under  Chapter 21, Section 22.011, or Section 22.021, Penal Code, is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred.

(b) The requirement that the victim inform another person of an alleged offense does not apply if at the time of the alleged offense the victim was a person:

(1) 17 years of age or younger;

(2) 65 years of age or older; or

(3) 18 years of age or older who by reason of age or physical or mental disease, defect, or injury was substantially unable to satisfy the person’s need for food, shelter, medical care, or protection from harm.
(footnote: 5)

Although the outcry/corroboration requirement remains for adults under the age of 65 who make a sexual assault complaint, the law is now gender neutral and follows the longtime Texas rule relieving those younger than eighteen years of age of the outcry/corroboration requirement.
(footnote: 6)
 If minor complainants do make an outcry, however, article 38.072 makes the child’s outcry statement admissible as substantive evidence of the offense.
(footnote: 7)  The Court of Criminal Appeals has explained,

Under Art. 38.072, by both the terms of the statute and by the legislative history, outcry testimony admitted in compliance with Art. 38.072 is admitted as an exception to the hearsay rule, meaning it is considered substantive evidence, admissible for the truth of the matter asserted in the testimony.
(footnote: 8) 

In promoting its policy of making conviction easier, the legislature limited those statements that constitute a 38.072 outcry to those statements that
  
describe the offense charged.
(footnote: 9)  
For an outcry statement to be admissible under article 38.072, the Texas Court of Criminal Appeals has held that the statement must describe the offense in some discernible manner and must be more than words which generally allude that something in the area of sexual abuse is occurring.
(footnote: 10)
 In his third point, Appellant complains that the trial court erred by admitting the testimony of Valerie Batchelder, the alleged outcry witness, because the State provided insufficient notice of the evidence.  Specifically, in relevant part, Appellant complains that the written summary of the outcry statement fails to describe any act for which Appellant was indicted.
(footnote: 11)   As the 
Garcia
 court explained after announcing this rule,

We believe that the statement must be more than words which give a general allusion that something in the area of child abuse was going on.  In picking the particular wording of the “first person” requirement, the legislature was obviously striking a balance between the general prohibition against hearsay and the specific societal desire to curb the sexual abuse of children.  That balance is the focal point of our analysis.  The portion of the statute catering to the hearsay prohibition demands that only the “first person” is allowed to testify.  But the societal interest in curbing child abuse would hardly be served if all that “first person” had to testify to was a general allegation from the child that something in the area of child abuse was going on at home.  Thus we decline to read the statute as meaning that any statement that arguably relates to what later evolves into an allegation of child abuse against a particular person will satisfy the requisites of Sec. 2(a)(2).  The statute demands more than a general allusion of sexual abuse.

. . . . 

. . . .  In order to be designated as the outcry witness by the trial court, one element that must be clearly shown by the evidence is that the victim described the offense to that witness.
(footnote: 12)

In 
Molina v. State
,
(footnote: 13) a case similar to the one before us, Molina was charged with aggravated sexual assault by penetration.  The complainant’s mother entered their apartment and saw her husband’s reflection in a mirror as he was tying the drawstrings of his shorts and threatening the complainant.  Suspicious, the mother invited friends over so she could question her daughter regarding what had happened.  She was the first adult to whom the complainant spoke about the incident, she spoke to the complainant on the day of the incident, she asked her daughter if the appellant had pulled his pants and underwear down, and the complainant answered “yes” to both questions.
(footnote: 14)  Nevertheless, the appellate court held that the complainant’s mother was not an outcry witness because “the complainant’s mother did not ask the complainant whether penetration occurred and . . . the complainant did not tell her mother sexual penetration occurred.”
(footnote: 15)
 In the case before us, Batchelder testified that the complainant told her, 

“things aren’t so good at home”;  

that her parents fought sometimes and that sometimes Appellant hit her too hard;

“sometimes my dad messes with me”;

that Appellant tickled her and sometimes touched her between her legs with his fingers, and sometimes he used his tongue;

that she tried to wear zip-up pajamas;

that her father “mess[ed] with her” most nights;

that she had not told her mother; and

that the events occurred while her mother was at a dance class.  

The complainant was not asked whether penetration of her sexual organ occurred, nor did she volunteer that it did.  Standing alone, her statements do not describe either the alleged offense of aggravated sexual assault by digital penetration or the alleged offense of aggravated sexual assault by oral-genital contact/penetration in a discernible manner.  Consequently, these statements are not more than general allusions that something in the area of sexual abuse occurred.
(footnote: 16)  Further, to the extent that the statements describe an unindicted offense, such as simple assault, this court has already held that article 38.072 does not extend “to an outcry of a child respecting a collateral matter or an extraneous offense.”
(footnote: 17)  

While it is not necessary that the outcry describe the offense with the specificity required by an indictment, it must describe the offense.  An outcry that “something happened” is not an outcry as contemplated by article 38.072.  
Consequently, I would hold that the trial court erred in admitting Batchelder’s testimony under article 38.072, sustain Appellant’s third point, and not address the remainder of this point.
(footnote: 18) 

In his fourth point, Appellant argues in relevant part that the trial court erred in admitting the testimony of Dawn Todd regarding the complainant’s prior statements because it was inadmissible impeachment evidence of the complainant. 
 I agree with the majority’s holding that Todd’s testimony was admitted in error to the extent that it was admitted as impeachment evidence, but I disagree with the inescapable conclusion from the majority’s opinion that Todd’s testimony could not be admissible evidence for all purposes on retrial.   Under the outcry exception, only one adult witness can receive an outcry of a single offense.
(footnote: 19)  In this case, Todd is that witness for both live counts.  
Todd testified that the complainant “indicated that [Appellant] . . . had touched her on her vagina [sic
(footnote: 20)] with his fingers and with his tongue.”  The complainant told her that it happened many times during her mother’s Monday night dance class.  Todd also testified that the complainant had indicated that the abuse had been going on for quite some time and that it had also occurred when the family had lived in Louisiana before moving to Texas.  The following exchange took place regarding the location on the complainant’s body of the alleged touching:

Q. When she talked about being touched between her legs, did you ever ask her to clarify and say what she meant by that?

A. I did.  She indicated her vagina.  And then at one point she was talking about something, and she said — she referred to a body part as her butt.  And I asked her to explain to me what her butt was, and she pointed to her genital area.  And I said, okay, what is the — we talked about where pee comes out or where poop comes out.  And where pee comes out she calls butt, and where poop comes out she called her rear.

Q. And the part where she said her dad touched her, what did she call that?

A. The butt.

Q. Did she ever call it anything else?

A. She called it vagina also.

. . . . 

Q. Did you ever talk to her about where specifically he had put his finger?  Did you talk about, like, inside versus outside?

A. We did.  I asked her, and she said it was between the — I don’t know if she said flap parts.  I don’t know if she was saying flap or flat parts, but she indicated it was on her vaginal area.  We talked about inside-outside, and she, if I remember correctly, said it was inside but not all the way in or made some reference to that.

Q. So in between the flat or flap parts?

A. Right.

As the first adult to whom the complainant made a discernible outcry about the live counts, Todd could have testified in the trial about the complainant’s outcry without limitation under article 38.072 if the other requirements of that statute had been met.
(footnote: 21)  They were not.  There is no indication in the record that the State provided the required notice or summary or that the trial court determined that the outcry to Todd is reliable.
(footnote: 22)  But I see no reason to bar the State from complying with the statute and introducing Todd’s testimony on retrial if the trial court determines that the outcry to Todd is reliable.
(footnote: 23)  This possibility upholds the policy behind the enactment of article 38.072 in the first place—curbing the sexual abuse of children in this State.
(footnote: 24) 

Consequently, while I concur in the outcome of the appeal, I must respectfully dissent from the majority’s holding that Batchelder is the proper outcry witness in this case.

LEE ANN DAUPHINOT

JUSTICE

PUBLISH

DELIVERED: April 6, 2006

FOOTNOTES
1:
As the complainant in this case is a minor child, we will refer to her throughout the opinion as Miriam, although that is not her real name. 

2:
We judicially notice the fact that the City of Carrollton lies in three counties—Collin, Dallas, and Denton.

3:
Moff
, 
131 S.W.3d at 489-90.

4:
Morales v. State
, 95 S.W.3d 561, 563 (Tex. App.—Houston [1st
 Dist.] 2002, pet. ref’d); 
Barnum v. State
, 
7 S.W.3d 782, 789 (Tex. App.—Amarillo 1999, pet. ref’d).

5:
In the final jury charge, the trial court instructed the jury 

. . . that testimony of the witnesses Dawn Todd and/or Corey Cook and/or Sarah Klein regarding statements of the witness [Miriam] was admitted for the purpose of impeaching [Miriam], 
if you find that it does impeach her
, and you cannot consider impeachment testimony as any evidence of the guilt of the defendant.  [emphasis supplied] 

6:
See 
Tex. R. Evid.
 104(a) (indicating that preliminary questions concerning the admissibility of evidence shall be determined by the court).

7:
The record reflects, however, that Klein did not request a limiting instruction at the time of S.A.’s testimony, i.e., Klein did not request the trial court instruct the jury that S.A.’s testimony was being admitted for the limited purpose of impeachment and could not be considered for any other purpose. [4RR 225]  Consequently, S.A.’s testimony was before the jury for all purposes.  
See Hammock v. State
, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001).

8:
See Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

1:
See 
majority op. at 31, 36.

2:
Reddick v. State
, 35 Tex. Crim. 463, 34 S.W. 274, 275-76 (1896).

3:
Id.
 at 274 (citations omitted).

4:
Scoggan v. State
, 799 S.W.2d 679, 682-83 (Tex. Crim. App. 1990) (citations omitted).

5:
Tex. Code Crim. Proc. Ann.
 art. 38.07 (Vernon 2005).

6:
S
ee Scoggan
, 799 S.W.2d at 681 (citing 
Hindman v. State
, 152 Tex. Crim. 75, 211 S.W.2d 182 (1948) for the typical analysis). 

7:
Tex. Code Crim. Proc. Ann.
 art. 38.072 (Vernon 2005).

8:
Rodriguez v. State
, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991).

9:
Tex. Code Crim. Proc. Ann.
 art. 38.072, § 2(a).

10:
Garcia v. State
, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990).

11:
See
 
Tex. Code Crim. Proc. Ann.
 art. 38.072, §2(a).

12:
Garcia
, 792 S.W.2d at 91.

13:
971 S.W.2d 676 (Tex. App.—Houston [14th
 Dist.] 1998, pet. ref’d).

14:
Id.
 at 682-83.

15:
Id.
 at 683.

16:
See id.

17:
Beckley v. State
, 
827 S.W.2d 74, 78-79 (Tex. App.—Fort Worth 1992, no pet.) (op. on reh’g).

18:
See 
Tex. R. App. P.
 47.1.

19:
Tex. Code Crim. Proc. Ann.
 art. 38.072, §2(a)(2).

20:
See Tyler v. State
, 950 S.W.2d 787, 789 (Tex. App.—Fort Worth 1997, no pet.) (“We would point out . . . that the vagina is an internal organ.  It is a canal that leads from the uterus of a female mammal to the external orifice of the genital canal.”).

21:
See 
Tex. Code Crim. Proc. Ann.
 art. 38.072, §2(b).

22:
See id.

23:
See id.

24:
Garcia
, 792 S.W.2d at 91.

COMMENTS AND ANNOTATIONS
Comment 1:
MAJORITY BY JUSTICE MCCOY, CONCURRENCE AND DISSENT BY JUSTICE DAUPHINOT.

Comment 2:
MAJORITY BY JUSTICE MCCOY CONCURRENCE AND DISSENT BY JUSTICE DAUPHINOT