COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-326-CR

 

 

JUAN MELECIO ESPARZA                                                     APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 211TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








A jury convicted Appellant Juan Melecio Esparza
of murder and assessed his punishment at seventy-five years=
confinement.  The trial court sentenced
him accordingly.  In three points,
Appellant argues that the trial court improperly admitted testimony of
Esmeralda Diaz concerning found luggage and its contents, that the testimony
was more prejudicial than probative, and that in the absence of the said
testimony, the evidence is factually insufficient to show that Appellant
intentionally and knowingly caused the death of Rebecca (Becky) Sosa.  Because Appellant has not preserved error in
the admission of evidence and does not otherwise challenge the factual
sufficiency of the evidence, we affirm the trial court=s
judgment.

Becky Sosa and Appellant had a rocky
relationship.  Around September 2004,
they began dating, and they quickly moved in together.  In 2005, Becky=s
relatives began to notice bruises and bite marks on her body and became aware
of Appellant=s controlling and jealous
behavior.  They spoke to Becky about her
leaving Appellant.  On June 11, 2005,
Josephine Coss, Becky=s cousin, went to the home Becky
and Appellant shared to see if they would attend a party that night with Becky=s family
in celebration of another cousin=s high
school graduation.  Appellant said that
he did not like Becky=s Apiece of
shit family.@ 
Becky=s cousin heard Appellant say
that if Becky went to the party, he would kill her.  Becky, however, did go to the party.  She wore a blue jean dress with stripes and a
pair of white shoes.  When Becky arrived
at the party, she told Coss that she Aleft
that piece of shit@ because her family comes first.








Later that night, Becky decided to go to her
house to change shoes.  Coss went with
her.  When they got to the house, Becky
went into her bedroom, and she and Appellant began to argue.  Coss heard Appellant threaten Becky.  He told Becky that if she left the house,
something would happen to her.

Becky returned to the party and appeared to have
a good time.  Becky did ask her cousin,
Julie Sosa, to take care of Becky=s
children, however, should anything happen to her.  After the party, Becky drove Coss home.  The two women lived a few houses apart on the
same street and were very close.

On June 13, 2005, after not hearing from Becky on
June 12, 2005, the day after the party, receiving no answer at her door, and
seeing no sign of her car, Coss filed a missing person=s
report.  That same day, she entered Becky=s home
through an open window.  Coss found Becky=s body
in her bedroom.  Becky=s body
was clothed in the same blue jean dress that she had worn to the party earlier
that weekend.  Her body showed bruise
marks from an apparent beating, and she had a bullet wound in her head.  No gun was located in the home, and Becky=s car
was gone.  Appellant was gone, and
pictures of Becky, her children, and Appellant were also missing.

The police received an anonymous tip that
Appellant was hiding in a neighborhood in Fort Worth.  A surveillance team made up of Denton police
officers, Fort Worth police officers, and Texas Rangers apprehended him after
they found him hiding behind a tree.








The day after Appellant=s
arrest, the man who owned the property where Appellant had been arrested called
the police and reported that he had found a loaded gun hidden in a trash bag
inside the ice cream cart he used in his business.  The gun was shown to be the same gun that
fired the bullet into Becky=s
brain.  Ammunition for that gun was found
during the search of Appellant=s rented
room down the street from the spot where he was arrested.  The police recovered Becky=s car
about half a mile from Appellant=s rented
room.








In May 2006, Becky=s former
landlord, Esmeralda Diaz, an assistant probation officer with Denton County
Community Supervision Department, found a black suitcase in a storage shed
behind the house Becky was renting from Diaz and her husband at the time of
Becky=s
death.  Diaz testified that the shed was
kept locked and that only she and her husband had the keys to it, so it was not
accessible to tenants.  But Diaz noticed
that a window had been broken out in the storage shed.  She had looked inside the shed not long after
Becky=s death
and had seen nothing.  But after seeing
the broken window in May 2006, she and her husband entered the shed and
discovered a black luggage bag under a desk in the shed.  Diaz realized that the bag did not belong to
them, so she and her husband opened it and discovered neatly folded clothing
that she described as male clothing; picture identification cards; pictures of
Becky and Appellant;  pictures of Appellant
and an older woman; a cell phone with pictures of Becky, her children, and
Appellant on it; and letters between Appellant and Becky.  Rather than keep the bag or turn it over to
the police department, and rather than notify the district attorney=s office,
she threw the bag and its contents away.

Appellant argues in his first and second points
that the evidence regarding the discovery of the bag and its contents was not
properly connected to him and consequently not relevant and also that the
testimony was more prejudicial than probative.








To preserve a complaint for our review, a party
must have presented to the trial court a timely request, objection, or motion
that states the specific grounds for the desired ruling if they are not
apparent from the context of the request, objection, or motion.[2]  Further, the trial court must have ruled on
the request, objection, or motion, either expressly or implicitly, or the
complaining party must have objected to the trial court=s
refusal to rule.[3]  Preservation of error is a systemic
requirement that this court should review on its own motion.[4]

A party must continue to object each time
objectionable evidence is offered.[5]  A trial court=s
erroneous admission of evidence will not require reversal when other such
evidence was received without objection, either before or after the complained-of
ruling.[6]  This rule applies whether the other evidence
was introduced by the defendant or the State.[7]

Appellant argues that he objected three times to
the admission of Diaz=s testimony relating to the
luggage and its contents.  Appellant is
only partially correct.  The first
relevance objection was to what Diaz saw when she opened the door to the
storage shed.  Her answer was that she
saw nothing.  The second relevance
objection occurred as follows:








Q. Okay.  When you went into this storage building
earlier this year, tell the jury what you observed and in what fashion.

 

[Appellant objects to the
relevance, and the objection is overruled.]

 

A. We observed that a window had been broken out,
and so we went in to see what was still there. 
And we went in and then my husband decided that we were going to clean
it out so that we could move one of the storage buildings.

There is no reference in connection with either of these objections to
the luggage in question or to its contents.

The third objection was a little more on
point.  The question was, AOkay.  And what is it that you discovered?  Physically what did you see?@  Appellant objected on the grounds of
relevance, and the objection was overruled. 
Diaz testified, AWe discovered a black luggage
bag that had clothes in there.@  That was the last relevance objection
Appellant lodged.  At no time did
Appellant lodge an objection to the prejudicial value of the testimony.  After the last objection, Diaz continued to
testify about the black bag.  She described
where it was hidden.  She described the
bag in detail.  She described its
contents in detail.  There was no further
objection until Appellant objected that a question was leading, and that
objection was also overruled.  Diaz
continued to describe the contents of the bag without objection.  Appellant then began to ask Diaz questions
about the contents of the bag.








Because Appellant did not object to each question
regarding the bag and its contents or request a running objection and obtain a
ruling, Appellant has not preserved either the issue of relevance or the issue
of prejudice for appellate review.  We
overrule Appellant=s first and second points.

In Appellant=s third
point, he argues that if we do not consider the improperly admitted evidence,
then the remaining evidence is factually insufficient to support his
conviction.  Appellant does not otherwise
challenge the sufficiency of the evidence. 
We note that this court has already held,

In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  Relying on the Texas Court of Criminal
Appeals rationale in Moff, . . . as well as the holdings of
our sister courts in Houston and Amarillo, we hold that Aall the evidence@ means all admitted
evidence, even evidence improperly admitted.[8]

 

Because Appellant does not otherwise argue that the evidence is
factually insufficient, and we have not held the challenged evidence
inadmissible, we do not reach the merits of his third point.








Having overruled Appellant=s
dispositive points, we affirm the trial court=s
judgment.

 

 

LEE
ANN DAUPHINOT

JUSTICE

 

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  October 1, 2009











[1]See Tex. R. App. P. 47.4.





[2]Tex. R. App. P.
33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998)
(op. on reh=g), cert. denied, 526
U.S. 1070 (1999).





[3]Tex. R. App. P.
33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).





[4]Archie v. State, 221 S.W.3d 695, 698
(Tex. Crim. App. 2007); Jones v. State, 942 S.W.2d 1, 2 n.1 (Tex. Crim.
App. 1997).





[5]Fuentes v. State, 991 S.W.2d 267, 273
(Tex. Crim. App.), cert. denied, 528 U.S. 1026 (1999); Ethington v.
State, 819 S.W.2d 854, 858B59 (Tex. Crim. App. 1991).





[6]Leday v. State, 983 S.W.2d 713, 718
(Tex. Crim. App. 1998); Johnson v. State, 803 S.W.2d 272, 291
(Tex. Crim. App. 1990), cert. denied, 501 U.S. 1259 (1991), overruled
on other grounds by Heitman v. State, 815 S.W.2d 681 (Tex. Crim. App.
1991).





[7]Leday, 983 S.W.2d at 718.





[8]Klein v. State, 191 S.W.3d 766, 775
(Tex. App.CFort Worth 2006)
(citations omitted), rev=d on other grounds, 273 S.W.3d 297 (Tex.
Crim. App. 2008).